Samuel P. GRAMAGLIA, Petitioner,

v.

Frank GRAY, Superintendent Chillicothe
Correctional Institute, Respondent.

No. C–1–74–421.

United States District Court,
S. D. Ohio, W. D.

April 15, 1975.

Bernard J. Gilday, Jr., Cincinnati, Ohio, for petitioner.

Robert D. Doane, Columbus, Ohio, for respondent.

## OPINION

DAVID S. PORTER, District Judge.

This cause is before us on a state prisoner's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and Respondent's return of writ (Doc. 4). Petitioner is presently serving a term of not less than 1 nor more than 7 years in the Ohio State Penitentiary for receiving and concealing stolen goods in violation of Ohio Revised Code § 2907.-30.

## I. FACTS

On February 5, 1973, more than $100,-000 worth of jewelry was stolen from the premises of the H. & S. Pogue Company at Kenwood Shopping Center. On March 24, 1973, Lieutenant Gary U. Neville of the Cincinnati Police Department applied to a judge of the Hamilton County Municipal Court for a warrant to search Apartment 2, 2890 Four Towers Drive in Cincinnati.

In support of his application, Lt. Neville submitted the following affidavit [1]:

"Gary U. Neville, being first duly cautioned and sworn, deposes and says that within the jurisdiction of the Hamilton County Municipal Court at Apartment #2, 2890 Four Towers Drive (Four Towers Apartment Complex), said apartment being located on the first floor level, he believes and has good cause to believe that at said place there are concealed numerous diamond rings, several of which have identifying numbers in the 'shank', said numbers being 1085 and 1087, and other lady's diamond rings and earrings with diamond settings, and that said items are concealed in violation of law, to wit: Receiving Stolen Goods; Section 2907.30, Ohio Revised Code. Such belief is supported by the following facts: Information from a reliable and confidential informer who has given information in the recent past which has resulted in arrests and confiscations of stolen property on at least two occasions. This informant states that he has seen the above listed stolen merchandise within the last seven days."

[1]. See petitioner's "Exhibit B" which is a copy of the combined form containing "Affidavit for Search Warrant;" "Search Warrant;" and, on the back side, "Return of Search Warrant."

At an evidentiary hearing in the state trial court, Lt. Neville testified that he had orally presented the judge with certain additional information, in further support of his application for search warrant. Lt. Neville testified that he informed the judge: that the informant's tip had been corroborated by an FBI Agent, one Steve Barnett; that on March 23, 1973, Agent Barnett was seated in a Cincinnati restaurant operated by Mr. Gramaglia and observed petitioner in the company of a local jeweller; that Agent Barnett observed Mr. Gramaglia remove a handful of diamond rings from a small bag and display them to the jeweller; that the agent could not then positively identify the gems as those which had been stolen, but he did overhear petitioner and the jeweller discussing prices (Tr. 19–21). Lt. Neville also told the judge that the unidentified informant had actually observed the stolen jewelry within the past two and one half to three days (Tr. 22), and that the informant had given reliable information in the recent past on *more than two* occasions.

It was not clear from a reading of the evidentiary hearing transcript whether or not the judge had orally been apprised of any other supportive facts. In any event, the requested warrant was issued by the judge; a search was conducted later that same day by police officers; and $47,000 worth of the stolen jewelry was recovered.

Petitioner challenged the validity of the search warrant in the Hamilton County Court of Common Pleas by filing motions to quash the warrant and to suppress evidence. Those motions were denied following the evidentiary hearing referred to above, and petitioner was subsequently convicted and sentenced. On appeal to the Court of Appeals for the First Appellate District of Ohio, the conviction was affirmed. The Supreme Court of Ohio then denied petitioner's motion for leave to appeal, and it is conceded that petitioner has exhausted his state court remedies as required by 28 U.S.C. § 2254(b).

As he has from the outset, petitioner here contends that the search warrant obtained by Lt. Neville was invalid and that the search was therefore illegal and violative of his Fourth Amendment rights. With two exceptions, we felt that the essential facts of this case were adequately developed in the state court hearing and it appeared that those facts were undisputed. Thus we concluded that no evidentiary hearing was required except on the two matters which were not adequately developed. See Townsend v. Sain, 372 U.S. 293, 312–13, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); 28 U.S.C. § 2254(d). Hence, we scheduled an evidentiary hearing for March 17, 1975, to determine whether or not the judge who issued the warrant was orally informed as to 1) where it was that the informant had seen the stolen jewelry, and to determine whether or not the judge was informed of 2) any connection between the apartment to be searched and the petitioner. The parties were told that they could present proof on these points in affidavit form if they so desired. See Doc. 6.

As it happened, both sides expressed a preference for proof by affidavit and counsel for both sides waived an evidentiary hearing (Docs. 8 and 12). Petitioner filed the single affidavit of Judge Klusmeier, the judge who had issued the search warrant (Doc. 7). Respondent filed three affidavits: one from Judge Klusmeier (Doc. 10) and two from Gary Neville (Docs. 9 and 11). Judge Klusmeier stated that he had no recollection, one way or the other, whether Neville gave oral testimony as to where the informant had seen the stolen jewelry or as to any connection between Mr. Gramaglia and the apartment to be searched. (Docs. 7 and 10). Gary Neville stated that while under oath he orally informed Judge Klusmeier of the following:

"1. That his informant and an informant of Agent Steve Barnett of the FBI, had both seen the stolen jewelry on March 23, 1973 in the petitioners possession at

the LaRosa's Pizza Parlor at 8th and Walnut and on Glenway Avenue near the Western Bowl.

2. That his informant had told him that the petitioner had the stolen jewelry with him *in his residence* at Apt. #2, 2890 Four Towers Drive in the evening of March 23, 1973, and

3. That members of the Cincinnati Police Department kept the above described Apartment building under surveillance after receiving the information that the petitioner had taken the stolen jewels *to his apartment* and that neither the petitioner nor anyone else entered or exited *the petitioners apartment* until members of the Police Department served the search warrant on petitioner on the morning of March 24, 1973." (Doc. 11, emphasis added.)

## II. LAW

Petitioner's specific asssertions of alleged constitutional infirmity are: 1) the search warrant in question was not supported by oath or affirmation at the time of issuance; 2) an affidavit for search warrant may not be supplemented by unrecorded oral testimony; 3) there was no probable cause for issuance of the search warrant or, at the least, 4) there was no *present* probable cause.[2] Before addressing these assertions in turn, we shall examine briefly the background of applicable law.

An evaluation of the constitutionality of a search warrant naturally begins with the Fourth Amendment which provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." It is well-established that the requirement of probable cause can be satisfied by hearsay information. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L. Ed.2d 697 (1960). And it is equally well-established that the informer's identity need not be disclosed. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). But if a search warrant's supporting affidavit is based on hearsay, the affidavit must comply with a two-prong test set out by the Supreme Court in Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). That is, the affidavit must contain 1) underlying circumstances from which the informant concluded that the items were where he claims; and 2) underlying circumstances from which the affiant concluded that the informant was reliable. We must also be mindful of the principles reiterated by the Supreme Court in Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969):

" . . . that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause; that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial; that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense; and that their determination of probable cause should be paid great deference by reviewing courts." (citations omitted)

## III. APPLICATION OF FACTS TO LAW

We turn now to the specific respects in which petitioner claims the warrant was invalid. In appealing to the First District Court of Appeals

2. See generally, pp. i–ii of petitioner's "Exhibit F," styled "Memorandum in Support of Claimed Jurisdiction of Ohio Supreme Court" which is incorporated by reference into the present petition for writ of habeas corpus; and p. 3 of petitioner's "Exhibit E," styled "Assignment of Errors and Brief of Appellant" which is also incorporated by reference into the present petition.

(Hamilton County, Ohio), petitioner alleged that "the affidavit for search warrant was not sworn to by the Affiant before the Deputy Clerk of Courts who took the acknowledgment until after the search warrant was executed" (Exhibit E, p. 3). And in seeking leave to appeal to the Ohio Supreme Court, petitioner asserted that an "unsigned, unsworn, written statement to a Judge" is an insufficient basis for the issuance of a warrant (Exhibit F, p. ii). The gist of these contentions seems to be that petitioner claims his Fourth Amendment rights were violated because the affidavit's contents were only sworn to before a deputy clerk *after* the warrant had been issued and the warrant, therefore, was not supported by oath or affirmation at the time of issuance.

It is true that Lt. Neville was sworn in before a Deputy Clerk of Courts after the warrant had been issued. But it is also undisputed that Lt. Neville was sworn in twice; and that he was *first* sworn when he entered the chambers of the judge who issued the warrant. At that time Lt. Neville attested to the validity of the affidavit's contents, signed the affidavit, and divulged certain additional information referred to earlier. Whereupon the judge signed the search warrant (which warrant appears directly beneath the affidavit on the front side of the customary form—see Exhibit B) on the signature line designated: "Judge, Hamilton County Municipal Court." See "Transcript of Proceedings", pp. 15–17, 24–25. See also Docs. 9 and 11 (affidavits of Gary U. Neville). Thus the affidavit was sworn to before an authorized officer of the court prior to issuance of the warrant in compliance with the Fourth Amendment, and invalidation of the warrant could only be based on the sort of hypertechnical interpretation which the Supreme Court denounced in United

States v. Ventresca, 380 U.S. 102 at 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

■ Petitioner also contends that:
"An Affidavit for Search Warrant which fails to demonstrate probable cause and is, therefore, invalid, may not be supplemented and bolstered by any contemporaneous, oral testimony taken by the magistrate which is not recorded and attached to, made part of or incorporated in the search warrant affidavit." Exhibit F, p. ii.

We disagree. At the time the search warrant in question was sought, the issuance of warrants in Ohio was governed by Ohio Revised Code, Sections 2933.21–25. Section 2933.23 (1971) stated that the judge "may demand other and further evidence before issuing such warrant." Thus it is our conclusion that in Ohio, at the time of the event in question, a written affidavit in support of a search warrant could be supplemented by sworn, unrecorded oral testimony. See the unreported opinion of the Court of Appeals of the First Appellate District of Ohio (Hamilton County, Ohio) in the case at hand, State v. Gramaglia, Case No. C–73583, decided July 22, 1974.[3] See also State v. Misch, 23 Ohio Misc. 47, 260 N.E.2d 841 (C.P.1970); Campbell v. Minnesota, 487 F.2d 1, 4–5 (8th Cir. 1973); United States v. Berkus, 428 F.2d 1148 (8th Cir. 1970); Gillespie v. United States, 368 F.2d 1 (8th Cir. 1966); United States ex rel. Pugach v. Mancusi, 310 F.'upp. 691 (S.D.N.Y.1970), aff'd, 441 F.2d 1073 (2d Cir.), cert. denied, 404 U.S. 849, 92 S.Ct. 156, 30 L.Ed.2d 88 (1971). And compare Tabasko v. Barton, 472 F.2d 871 (6th Cir. 1972), in which the Sixth Circuit Court of Appeals collected cases but expressly refrained from ruling on this issue.

An affidavit cannot be supplemented by oral testimony today in the federal jurisdiction. See Rule 41(c) of the

---

3. Petitioner's motion for leave to appeal this decision to the Supreme Court of Ohio was denied by that Court on October 10, 1974, on grounds that no constitutional question existed.

Federal Rules of Criminal Proceaure; Rosencranz v. United States, 356 F.2d 310 (1st Cir. 1966). Yet Rule 41(c) "has not been held to be a rule of constitutional dimension applicable to the states." *Tabasko,* supra 472 F.2d at 873; *Campbell,* supra. Similarly, Rule 41(C) of the Ohio Rules of Criminal Procedure *today* requires that oral supplementation be recorded and appended to the affidavit. But the Ohio Rules of Criminal Procedure did not become effective until July 1, 1973, more than three months after the occurrence of the events in question. Accordingly, neither Rule 41(C) nor any other "new" Ohio procedural rule has any binding effect on this cause.[4] Hence, this asserted ground for relief is without merit.

Next we turn to petitioner's primary claim that the search warrant was unsupported by probable cause. It appears that the issuing judge was apprised of the following facts before issuing the warrant:

1) That an anonymous informer personally observed stolen jewelry in petitioner's possession shortly before the application for search warrant was made—that is, within 3 days (or less) prior to issuance of the warrant.

2) That the informant had given reliable information on several recent occasions.

3) That the information regarding petitioner was corroborated by an FBI Agent who saw a substantial quantity of jewelry (of the type which had been stolen) in petitioner's possession the day before issuance of the warrant.

4) That the apartment to be searched was the residence of petitioner.

5) That petitioner was then at that apartment and had been there, under police surveillance, since the day before —a day when jewelry had been seen in his possession.

In evaluating the above factors, we must first determine whether there has been compliance with the requirements of *Aguilar,* supra. In Spinelli v. United States, supra 393 U.S. at 416, 89 S.Ct. at 589, the Supreme Court elaborated upon the first prong of *Aguilar's* two-part test as follows:

> "We are not told how the FBI's source received his information—it is not alleged that the informant personally observed Spinelli at work . . . .. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable. In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." (Citation omitted.)

Thus the Supreme Court has indicated that the purpose of *Aguilar's* first prong is to determine *how* the informant acquired his information. Accordingly, where it is not clear that the information and conclusions in question stem from personal observation, the affidavit must contain such detail as will assure the magistrate that the informant is relying on something more than casual rumor or general reputation.

In the present case, the affidavit indicates that the informant personally saw the stolen merchandise. It thus indicates that the informant came by his information directly. And it is thus in compliance with the first prong

---

4. At the Ohio Court of Appeals, petitioner urged that the trial court erred by failing to journalize certain findings of fact in an order overruling a motion to suppress evidence, relying on rule 12(E) of the Ohio Rules of Criminal Procedure. This ground of relief was apparently not pursued before the Ohio Supreme Court, and it is not cognizable under 28 U.S.C. Sec. 2254, in any event. Besides, we note in passing that the Ohio First District Court of Appeals found the trial court did comply with Rule 12(E).

of *Aguilar's* two-part test. To interpret the affidavit otherwise, we think, would be to give it "an unduly technical and restrictive reading." United States v. Ventresca, supra 380 U.S. at 111, 85 S.Ct. at 747. The affidavit also satisfies the second prong of *Aguilar* by outlining the informant's "past performance" and thereby indicating the underlying circumstances from which Lt. Neville concluded that the informant (who received his information directly) was credible. *Aguilar* requires nothing more.

▉▉ Thus accepting the facts supplied by the reliable informant, along with the corroborative and supportive facts set out earlier, it remains to be decided whether there was probable cause to believe that the stolen merchandise would be found in the apartment to be searched. We believe there was probable cause. In this regard, we again stress that "great deference" must be given to the magistrate's determination of probable cause. See *Spinelli*, supra; Coury v. United States, 426 F.2d 1354, 1356 (6th Cir. 1970); United States v. Olt, 492 F.2d 910, 912 (6th Cir. 1974). We also stress that a magistrate need not be *convinced* that goods are in a specific place—it is only necessary that he have a substantial basis for so concluding. See *Jones*, supra, 362 U.S. at 271, 80 S.Ct. 725; *Rugendorf*, supra, 376 U.S. at 533, 84 S.Ct. 825. Finally, we take note of the numerous cases in which courts:

> " . . . have upheld searches although the nexus between the items to be seized and the place to be searched rested not on direct observation, as in the normal search-and-seizure case, but on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property."

See United States v. Lucarz, 430 F.2d 1051, 1055 (9th Cir. 1970).

In the case at hand, the alleged concealment of stolen jewelry involves on-going conduct inherently replete with real evidence; stolen jewelry can be easily hidden in an apartment (compare stolen cars); and the petitioner apparently had little opportunity for more elaborate concealment or for dispersion of the stolen gems since he had been seen in possession of jewelry the day before issuance of the warrant and had been under surveillance at his apartment for much of that time. Moreover, it is normal to infer that a person who had so recently been seen in possession of stolen jewelry would be likely to conceal that jewelry in the apartment where he then lived—especially where the apartment, at the very time of issuance of the warrant, was known to be occupied by said person. Compare *Lucarz*, supra; Cundiff v. United States, 501 F.2d 188 (8th Cir. 1974); Quigg v. Estelle, 492 F.2d 343 (9th Cir. 1974); United States v. Mulligan, 488 F.2d 732 (9th Cir. 1973); Bastida v. Henderson, 487 F.2d 860 (5th Cir. 1973); United States v. McCann, 465 F.2d 147 (5th Cir. 1972); Vessels v. Estelle, 376 F.Supp. 1303 (S.D.Texas 1973); United States v. Archer, 355 F.Supp. 981, 990–91 (S.D.N.Y.1972), reversed on other grounds, 486 F.2d 670 (1973); Hanger v. United States, 308 F.Supp. 281 (E.D.Mo.1969), aff'd, 428 F.2d 746 (8th Cir. 1970), cert. denied, 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 634.

▉ Petitioner's final claim is one which, in essence, we have already resolved. Petitioner contends that there was no establishment of *present* probable cause since the "affidavit for search warrant represents that the stolen properties were seen by an informer 'within the last seven days.'" See Exhibit E, p. 3. We, of course, have already accepted the oral supplementation of the affidavit which supplementation indicated that the informant saw the stolen merchandise no later than 3 days prior to the search. Further, there was substantial corroboration just the day before the search. And, in any case, a seven day lapse is not such an unreasonably long delay so as to vitiate probable

cause. See *Coury,* supra; Bastida v. Henderson, supra; Irby v. United States, 314 F.2d 251, 254 (D.C.Cir. 1963); United States v. Harruff, 352 F.Supp. 224, 225 (E.D.Mich.1972); United States v. Malugin, 200 F.Supp. 764 (M. D.Tenn.1961); United States v. Allen, 147 F.Supp. 955 (E.D.Ky.1957). See generally, 100 ALR2d 534 (collecting cases).

For the foregoing reasons, the present petition for writ of habeas corpus must be, and hereby is, denied.