UNITED STATES of America, Appellant,

v.

Alonzo Lee RICHARD.

No. 75–2439.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule
12(6) April 9, 1976.

Decided May 13, 1976.

W. Laird Stabler, Jr., U. S. Atty., John H. McDonald, Asst. U. S. Atty., Wilmington, Del., for appellant.

Jay H. Conner, Conner, Daley & Erisman, Wilmington, Del., for appellee.

Before GIBBONS, Circuit Judge, CLARK * Associate Justice of the Supreme Court, and HUNTER, Circuit Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is an appeal by the United States from an interlocutory order in a pending criminal prosecution suppressing certain evidence. We have jurisdiction pursuant to 18 U.S.C. § 3731. The district court held that the affidavit upon which a United States Magistrate relied in issuing the search warrant was insufficient to establish probable cause to search. Because we conclude that the affidavit was sufficient to establish probable cause to search, we reverse.

On September 8, 1975, at approximately 10:51 a. m., a branch of the Colonial National Bank in Wilmington, Delaware was robbed. The bank, which is insured by the Federal Deposit Insurance Corporation, is located at Maryland Avenue and Chandler Street. Minutes before the robbery Mrs. Maryann Sobocinski, a bank customer, had observed two black men cruising in a black automobile, model year 1973 or 1974, in that vicinity. She made a mental note of the license number of the vehicle "because the neighborhood is predominantly white".[1] Mrs. Sobocinski wrote this license number on a piece of paper when she returned to her home and reported it, as well as a description of the car's occupants, to the police when she learned of the robbery. The police ascertained that the reported vehicle was registered to the wife of defendant Alonzo Lee Richard, residing at 122 West 34th Street, in Wilmington. The police and agents of the FBI went to that address at 11:25 a. m. A black Oldsmobile bearing the license number reported by Mrs. Sobocinski was in plain view, and the engine was still hot. Richard was interrogated about the robbery but denied any knowledge of it. He voluntarily accompanied the FBI agents and the police to the bank where Joseph S. Crossan positively identified Richard as the driver of a black car, described as a Pontiac, which he had seen in the vicinity of the bank at the time of the robbery. At the bank show-up Richard was wearing denim trousers and a white shirt with multi-colored polka-dots. After observing Richard, an eyewitness to the robbery in the bank stated that the polka-dot shirt appeared to be the undershirt worn by the negro male who had committed the robbery. The FBI maintained surveillance of the house at 122 West 34th Street and of the black Oldsmobile continuously from 11:25 a. m.

An FBI agent set forth the foregoing facts in an affidavit,[2] and requested a war-

---

* Sitting by designation.

1. Affidavit by Special Agent Angelo J. Lano, Federal Bureau of Investigation.

2. The full text of Agent Lano's affidavit follows:

"AFFIDAVIT

STATE OF DELAWARE ⎫
COUNTY OF NEW CASTLE ⎬ ss.
⎭

Angelo J. Lano, being duly sworn, states and deposes as follows:

I am a Special Agent of the Federal Bureau of Investigation, and in the course of my duties, I am conducting an investigation into the rob-

bery of the Colonial National Bank, Maryland Ave. and Chandler Street, Wilmington, Delaware, which occurred at 10:51 a. m. on September 8, 1975.

On information and belief, Mrs. Maryann Sobocinski stated to Agents of the FBI that at approximately 10:45 a. m. on 9–8–75 she was walking to the Colonial National Bank (CNB) on Jackson St. when she observed a black automobile, model year 1973 or 1974, two-door with opera windows proceeding west on Jackson Street as it turned off of Linden Street. The vehicle was occupied by two negro males.

Sobocinski stated that she proceeded to the CNB, transacted her business, and when she

rant to search for "a hand-gun, a nylon stocking mask, [a] blue denim shirt and currency which are believed to have been used in the commission of a robbery of the Colonial National Bank . . . and certain currency which was stolen from said bank. . . ." The Magistrate issued a warrant authorizing the search of the Oldsmobile automobile and the premises at 122 West 34th Street.

The warrant for search of the house was executed at 3:12 p. m. on September 8, 1975. The agents found and seized the following items believed to have been connected with the robbery: one pellet gun, one black silk stocking, one toy silver and black (pistol) handle, one white gym bag marked "Spa Health Club", one burlap bag marked "E–Z Striders" and $1636 in cash which had been hidden in the ceiling of the residence.

The district court, however, held that the facts established by the affidavit, considered in the aggregate, were insufficient to establish probable cause for the issuance of the warrant. It therefore granted defendant's motion to suppress the seized evidence.

We agree with the district court that the presence of two black males cruising in a car in a predominately white neighborhood is, by itself, insufficient cause for a belief that those persons have participated in a recent crime in the neighborhood. But the affidavit establishes that Mrs. Sobocinski's suspicion, which we might not have shared, led to the identification of a car containing two black males, which was in

departed the bank walked north on Chandler Street toward Jackson. At that time Mrs. Sobocinski again observed the same black automobile and occupants which she had earlier observed turning from Linden Street onto Jackson Street. At the time she departed the bank this black car was proceeding north on Chandler St. adjacent to the bank, and travelling in the direction of Jackson St. Sobocinski stated that she noticed the vehicle because the neighborhood is predominately white and made a mental notice of the license number. Sobocinski further stated that she repeated the license number to herself until she arrived home, when she wrote the number on a piece of paper. The license number recorded by Sobocinski is Delaware registration 359 902. Sobocinski described the occupants as follows: Driver: negro male, in middle twenties, thin to medium face with pony tail tied with a ribbon, wearing a light colored shirt; passenger: negro male in his twenties, chunky face, regular length hair wearing a medium blue shirt with long sleeves rolled up.

Agents of the FBI and Wilmington Bureau of Police traced the registration number of the car to Clara J. Richard, 122 West 34th Street, Wilmington, Delaware.

Agents of the FBI interviewed Joseph S. Crossan, 420 South Jackson Street (situated on the southwest corner of Jackson and Chandler Streets). Crossan stated to Agents that at between 10:30 and 11:00 a. m. he observed a 1973 or 1974 Pontiac, black in color, two doors, with opera windows, in the vicinity of Jackson and Chandler Streets.

Based upon the trace of the vehicle registration Agents of the FBI and Wilmington Bureau of Police went to 122 W. 34th Street, Wilmington, Delaware, and contacted Alonzo Lee Richard. Richard denied knowledge of the robbery of CNB and voluntarily accompanied Agents of the FBI and WBP to the bank. Joseph S. Crossan positively identified Richard as the driver of the automobile which he had observed in the vicinity of Jackson and Chandler Streets at between 10:30 and 11:00 a. m. on 9–8–75. At the time of the showup Richard was wearing denim trousers and a white shirt with multi-colored polka dots. After observing Richard eyewitnesses to the robbery in the bank stated that the polka dot shirt appeared to be the same as the undershirt worn by the negro male who robbed the bank. This identification was made by Lorraine Marsilli.*

At the time the agents and police arrived at Richard's residence at 122 W. 34th Street— 11:25 a. m. on 9–8–75—they observed a 1973 Oldsmobile, two-door hardtop, black in color with opera windows, Delaware license number 359 902. At 11:25 a. m. the engine of the automobile was still hot. Surveillance of the house has been continuously maintained by the FBI and WBP from 11:25 a. m. until the present.

Additionally, when the robber made his getaway from the bank, he ran west on ~~Maryland Ave.~~ Chandler Street, toward Lancaster Avenue and disappeared in the vicinity of the Medical Examiners Building. This was observed by Elizabeth Yasik.

/s/ ANGELO J. LANO
Special Agent F.B.I.

Subscribed & sworn to before me on this 8th day of Sept. 1975.

/s/ ANNE A. HARRISON
(seal) Notary Public"

* The identification of Lorraine Marsilli as the eyewitness was a typed addition to the affidavit.

the vicinity of the bank at the critical time. Following up on what may at the initial stage of the investigation have been nothing more than a hunch, the police and FBI agents obtained, with Richard's cooperation, a positive identification of him as one of the persons who was in the vicinity of the bank at the time of the robbery, and an identification of a distinctive article of clothing he was still wearing as similar to that worn by a participant in the robbery. The affidavit further states that Mrs. Sobocinski observed that the persons cruising in the car wore shirts, one of which is described as medium blue in color. Considering the close time proximity between the robbery and the showup, the Magistrate could properly have concluded that Richard probably had discarded this blue shirt, which might still be in the premises to be searched. An eyewitness to the robbery, Lorraine Marsilli, moreover, identified the robber as a negro male wearing a polka-dot undershirt. Richard, a negro male, was positively identified as being near the bank about the time of the robbery. Within forty minutes of the robbery he was found near his wife's car, which had been recently driven and which was positively identified as having been in the vicinity of the bank at the time of the robbery. When he was found, Richard was wearing a polka-dot undershirt. The witnesses who furnished the information are identified in the affidavit, the circumstances surrounding their disclosures are set forth, and the information furnished by each witness tends to verify that furnished by the other.

The Supreme Court has emphasized that "affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965). *Accord, United States v. Harris*, 403 U.S. 573, 577, 91 S.Ct. 2075, 2078, 29 L.Ed.2d 723, 730 (1971). Only a probability, not a prima facie case, of criminal conduct need be shown to support the issuance of a warrant.

*E. g., Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637, 645 (1969); *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142, 147 (1964); *United States v. Gimelstob*, 475 F.2d 157, 160 (3d Cir.), *cert. denied*, 414 U.S. 828, 94 S.Ct. 49, 38 L.Ed.2d 62 (1973). A magistrate could, on the basis of the facts set forth in the affidavit, reasonably conclude that Richard probably was the negro wearing a polka-dot undershirt who had robbed the bank, and that the instrumentalities and fruits of the robbery probably were concealed at 122 West 34th Street. No more was required.

The order suppressing the items seized in execution of the search warrant will be reversed.