UNITED STATES of America, Plaintiff,

v.

Donald TROTT a/k/a "Gypsy" and Antonio Martines a/k/a "Tiny", Defendants.

Crim. A. No. 76–82.

United States District Court, D. Delaware.

Oct. 22, 1976.

John H. McDonald, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Joel D. Tenenbaum, of Woloshin & Tenenbaum, Wilmington, Del., for defendants.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

Before the Court is a motion by defendant Trott to suppress all the evidence seized in connection with a search of a residence at 1629 Willow Avenue, Pleasant Hills, Wilmington, Delaware, belonging to Trott and his wife, on or about July 23, 1976.[1] This search preceded the return of a three count indictment charging Trott and Martines with distribution, possession with intent to distribute, and conspiracy to manufacture a non-narcotic controlled substance ("methamphetamine") in violation of 21 U.S.C. § 841(a)(1) and § 846. Also before the Court is the defendant Martines' motion to sever for trial Count I of the indictment from Counts II and III; this issue will be considered in part III of the Court's opinion.

On July 23, 1976, Detective Adamowski of the Drug Control Unit of the New Castle County Police executed an affidavit for a search warrant for the premises at 1629 Willow Avenue, Pleasant Hills, Wilmington, Delaware. The affidavit was the result of a three year investigation into the activities of the Pagan Motorcycle Club ("PMC"). Based upon the affidavit, a magistrate issued the requested search warrant on July 23, 1976, and it was executed the same day.

The relevant facts from which the magistrate found probable cause to issue the warrant are summarized as follows: (1) the affiant witnessed a delivery of methamphetamine to a reliable, confidential informant and Trott was a participant in this delivery; (2) the affiant was informed of a meeting of PMC members at Trott's residence by the reliable informant on July 7, 1976; (3) the meeting was to discuss plans with a chemist from New Jersey for the establishment of a clandestine laboratory for the manufacture of methamphetamine; (4) Det. Adamowski corroborated the story of the reliable informant by surveilling the meeting; (5) recorded conversations between the informant and Martines implicated Trott as a participant in the plan to distribute sizeable quantities of methamphetamine; (6) a meeting between Trott and a second proven reliable informant on July 14, 1976, and witnessed by the affiant, revealed that Trott was the financier of a clandestine laboratory for the manufacture of phencyclidene (a controlled substance) which had earlier been seized in a raid conducted by the affiant; (7) previous arrests of major distributors of illicit drugs by Det. Adamowski and the other affiants resulted in the seizure of "ledgers" or records detailing the numerous drug transactions engaged in by a particular distributor; (8) on July 14, 1976 at 6:30 P.M. the affiant witnessed a meeting between Trott and a reliable informant in which Trott showed the informant a formula for the manufacture of methamphetamine.

The defendant has set forth basically two grounds in support of his motion to suppress. Each contention will be discussed seriatim.

I. *The warrant, authorizing the search and seizure of defendant's private papers, violates the Fifth Amendment privilege against compelled self-incrimination.*

This particular ground for defendant's motion appears to combine a claimed Fifth Amendment violation and a claim that the warrant is not particular in the items it names to be seized.[2] As to the latter objection, the defendant contends that Det. Adamowski's misconception of the meaning of the term "ledgers" makes the warrant a "general warrant" prohibited by the Fourth Amendment's requirement that "no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Court does not agree with

---

1. A hearing on the motion to suppress was conducted pursuant to Rules 12 and 41, F.R. Cr.P., on September 30, 1976.

2. Docket Item 15 at 4–7; Docket Item 17 at 2–4.

either of defendant's objections to the warrant.

Det. Adamowski used the word "ledger" interchangeably with "records" in the affidavit and for this Court to adopt the narrow and hypertechnical definition of "ledger" proposed by the defendant would fly in the face of numerous cases that urge a common sense and realistic interpretation of affidavits and warrants. *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *United States v. Richard,* 535 F.2d 246 (C.A.3, 1976); *United States v. Rahn,* 511 F.2d 290 (C.A.10, 1975). The Court reads "ledger" in the nontechnical sense of "record," the same as Det. Adamowski and the issuing magistrate undoubtedly did. The challenged term authorized only the search for and seizure of records pertaining to the distribution and sale of illicit drugs, and probable cause to believe that evidence in the form of records or ledgers relating to such crime were concealed in defendant's residence was clearly established in the supporting affidavit. Accordingly, the search was conducted within the ambit of lawful police activity and nothing was left to the discretion of the officers executing the warrant. *Cf. Andresen v. Maryland,* —— U.S. ——, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Coolidge v. New Hampshire,* 403 U.S. 443, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971).

The Court also disagrees with defendant's contention that the search for and seizure of a person's private papers necessarily violates the Fifth Amendment privilege against self-incrimination. The Fifth Amendment privilege does not prevent the disclosure of private information; rather it protects a person "only against being incriminated by his own compelled testimonial communications." *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

The records seized in this case were "voluntarily committed to writing" by the defendant; the search and seizure was "conducted by law enforcement personnel;" and the defendant has neither been "required to aid in the discovery, production, or authentication of incriminating evidence" nor compelled to "say or do anything under penalty of sanction." *Andresen v. Maryland,* —— U.S. ——, ——, 96 S.Ct. 2737, 2746, 49 L.Ed.2d 627 (1976). And since the privilege "adheres basically to the person, not to information that may incriminate him," *Couch v. United States,* 409 U.S. 322, 328, 93 S.Ct. 611, 616, 34 L.Ed.2d 548 (1973), the warrant authorizing the search and seizure of defendant's private papers fully comports with the Fifth Amendment. The motion to suppress, on this ground, is therefore denied.

II. *The affidavit failed to give the magistrate probable cause to believe the ledgers or formulas were, in fact, located in defendant's residence.*

At the outset the Court recognizes that "only a probability, not a prima facie case, of criminal conduct need be shown to support the issuance of a warrant." *United States v. Richard,* 535 F.2d at 249. The affidavit for the warrant in this case is not merely a montage of conclusory statements of probable cause by a faceless informant or police officer without setting forth any underlying facts and circumstances from which the conclusions were drawn. Defendant does not raise an *Aguilar-Spinelli* problem and none exists. Rather the question is whether a man of reasonable caution would be warranted, accepting as reliable the underlying facts in the affidavit, in believing that records or ledgers pertaining to the distribution of illicit drugs or a formula for the manufacture of methamphetamine would be found in the residence, or on the person, of Trott or his wife. *Agnellino v. New Jersey,* 493 F.2d 714, 727 (C.A.3, 1974); *United States v. Neal,* 500 F.2d 305 (C.A.10, 1974).

The Court cannot agree with the defendant's contention that no probable cause existed to believe that records or ledgers

would be found at Trott's residence. The affidavit provides a reasonable basis for believing that Trott was a major distributor of drugs and that, on the basis of the affiant's personal experience, as well as that of other drug enforcement personnel, major drug dealers routinely keep ledgers or records of their transactions. *Cf. United States v. LaVecchia,* 513 F.2d 1210, 1216 (C.A.2, 1975); *United States v. Capra,* 501 F.2d 267, 280 (C.A.2, 1974). An example of the accuracy of this contention appears in the affidavit when Det. Adamowski states that "records" related to the sale of marijuana were seized in connection with the arrest of Antonio Martines and Frances Oliveri in the summer of 1974 for the possession of 15 pounds of marijuana.[3] Furthermore, the affidavit provides a reasonable basis for believing, on the basis of information obtained from a proven reliable informant, that Trott was in possession of a formula for the manufacture of methamphetamine on July 14, 1976. In view of the relationship between Martines and Trott[4] and their involvement, as revealed by proven reliable informants, with the distribution and manufacture of methamphetamine, it was reasonable to believe that records and ledgers or formulas would be found on the premises, owned by Trott, at 1629 Willow Avenue, Pleasant Hills.

 That the affidavit in issue did not contain anyone's observation of the ledgers or formulas at Trott's residence is not fatal to a determination that probable cause existed to search the residence. *United States v. Rahn, supra,* 511 F.2d at 293; *United States v. Mulligan,* 488 F.2d 732 (C.A.9, 1973), *cert. denied,* 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974). Nor must the affidavit contain information providing a "certainty that the objects sought will be found as a result of the search." *Porter v.*

*United States,* 335 F.2d 602 (C.A.9, 1964), *cert. denied,* 379 U.S. 983, 85 S.Ct. 695, 13 L.Ed.2d 574 (1965). The issue is whether the facts and circumstances described in the affidavit warrant a man of reasonable caution in determining that the articles sought are located at defendant's residence. *United States v. Richard, supra.* Admittedly there are other places where ledgers or formulas might *conceivably* have been stored; yet the facts and circumstances here amply support the magistrate's conclusion[5] that the ledgers or formulas were probably concealed at Trott's residence. *United States v. Richard, supra* at 248–249.

 Indeed, there are numerous cases in which courts have

" . . . upheld searches although the nexus between the items to be seized and the place to be searched rested not in direct observation, as in the normal search-and-seizure case, but on the type of crime the nature of the missing items, the extent of the suspect's opportunity for concealment, and *normal inferences* as to where a criminal would be likely to hide stolen property."

*United States v. Lucarz,* 430 F.2d 1051, 1055 (C.A.9, 1970) (emphasis added). Accordingly, the Court is satisfied that the magistrate had probable cause to believe, on the basis of the affidavit, that ledgers or formulas dealing with the distribution of illicit drugs would be found at Trott's residence.

 At the hearing on defendant's motion, however, Det. Adamowski conceded that some of the papers seized at the defendant's residence did not fall within the category of "ledgers" dealing with the distribution of illicit drugs or "formulas" for the manufacture of methamphetamine.[6] Although Det. Adamowski's explanation for

3. See Tr. at 9; 31.

4. Tr. at 10; 13–14; 30; 44–45, 55.

5. A magistrate need not be convinced that contraband is located in a specific place; it is only necessary that he have a substantial basis for so concluding. *Rugendorf v. United States,* 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887

(1964); *Jones v. United States,* 362 U.S 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Jenkins,* 525 F.2d 819, 823 (C.A.6, 1975); *Gramaglia v. Gray,* 395 F.Supp. 606, 612 (D.Ohio, 1975).

6. Tr. at 20–24.

this error was a reasonable one,[7] the Court concludes that those items not falling within the authorized scope of the warrant should be suppressed.[8]

### III. *Defendant Martines' Motion to Sever.*

The defendant Martines moved, pursuant to Rule 14, F.R.Cr.P., to sever for trial Count I from Counts II and III of the indictment on the ground that Count I alleges a separate offense against Martines which might prejudicially influence the jury's consideration of Counts II and III which charge Trott and Martines with a substantive offense and conspiracy respectively.

Rule 8(b), F.R.Cr.P., permits two or more defendants to be charged together in one or more counts if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Both defendants are charged in Count III with conspiracy to manufacture and distribute a controlled substance, methamphetamine, in violation of 21 U.S.C. § 841(a)(1) over approximately seven months from January 1976 until late July 1976. Counts I and II allege separate substantive offenses involving distribution of a controlled substance during the same time period the conspiracy is alleged to have existed.

The general rule is that a conspiracy count may be joined with the substantive offenses which are its object, especially where the evidence relied upon to establish the conspiracy will enhance the substantive count of the indictment. *United States v. Campanale,* 518 F.2d 352, 359 (C.A.9, 1975); *United States v. Dolasco,* 470 F.2d 1297 (C.A.3, 1972), *cert. denied,* 411 U.S. 919, 93 S.Ct. 1558, 36 L.Ed.2d 312 (1972). There appears to be no doubt here that the substantive counts and the conspiracy count are of similar character since the charge is a single conspiracy contemplating a single end. *See Blumenthal v. United States,* 332 U.S. 539, 556, 558, 68 S.Ct. 248, 92 L.Ed. 154 (1947); *Gordon v. United States,* 438 F.2d 858 (C.A.5, 1971). The government's offer of proof at trial will attempt to attribute actions of Martines on the date of Count I to Trott and to prove that both Count I and Count II were integral parts of the conspiracy alleged in Count III. The joinder of defendants, therefore, is proper under Rule 8(b). Furthermore, the Court does not perceive any prejudice that will necessarily result from joinder, but it would, of course, be prepared to deal with any possible threat of prejudice at trial should that eventuality present itself. Accordingly, Martines' motion to sever for trial Count I from Counts II and III will be denied.[9]

The above shall constitute the findings of fact and conclusions of law.

An order will be entered in accordance with this memorandum opinion.

---

**7.** Tr. at 63–68. Det. Adamowski stated that since he is not a drug expert he was unsure at the time of the search whether certain papers constituted "formulas" properly seizable under the warrant.

**8.** Counsel for defendant segregated those items that did not fit into either category of "ledgers" or "formulas"; the items were marked "GX 2A" for purposes of identification by the clerk of court. Tr. at 28–29. These are the only items to be suppressed.

**9.** Defendant Donald Trott originally moved, pursuant to Rule 14, F.R.Cr.P., for a separate trial of the defendants. (Docket Item 13). However, that motion was withdrawn by Trott's counsel at the suppression hearing (Tr. 72) and was abandoned at briefing. (Docket Items 15 & 17). Accordingly, this motion, because of its withdrawal, will also be denied.