380 A.2d 807

**COMMONWEALTH of Pennsylvania**

v.

**George BRITTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 22, 1976.

Decided Dec. 2, 1977.

336

John W. Packel, Assistant Public Defender, and Benjamin Lerner, Defender, Philadelphia, for appellant.

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

This is an appeal from the judgment of sentence entered against Appellant George Britton in the Court of Common Pleas of Philadelphia County. Appellant was convicted by a jury on November 25, 1975, on charges of possessing an instrument of a crime—generally, criminal conspiracy, robbery, and aggravated assault. Appellant's post trial motions were denied.

Appellant cites numerous bases for this appeal. He alleges that the trial court erred in (a) limiting appellant's cross-examination of the alleged victim thereby denying appellant his constitutional right of confrontation; (b) limiting appellant's own direct testimony through which he attempted to establish misidentification as a defense; (c) striking from the record and prohibiting further testimony concerning physical coercion of appellant that would bear on the jury's determination of the voluntariness of appellant's

statement to the police; (d) admitting Commonwealth Exhibit C–3, a knife, into evidence when there was no positive identification of the weapon and a gap in the chain of custody; (e) denying appellant's motion to suppress evidence and statements; and (f) refusing to grant a continuance in order to allow appellant to obtain the notes of testimony of the suppression hearing for use in cross-examination at trial.

We agree with appellant that the trial court abused its discretion and violated his constitutional right of confrontation in restricting his examination and cross-examination of certain witnesses. Accordingly, we reverse and remand for a new trial.

On August 7, 1975, Clarence Lane was stabbed and robbed by two men on a Philadelphia street. Shortly after the incident, appellant was apprehended by the police a short distance from where the stabbing occurred. The other alleged assailant, one Davenport, has never been apprehended. The jury found that appellant, when apprehended, was carrying a nine-inch folding knife covered with a sticky red substance and a wallet containing identification cards belonging to Clarence Lane.

At the preliminary hearing, suppression hearing, and trial, Lane was questioned extensively as to the identification of Appellant Britton. Not all of his statements were consistent. For example, at the hearing, Lane testified that he knew appellant from his neighborhood and that before the stabbing incident he had seen appellant "every day, just about. I see him on the corner." (N.T. P.H. 9.) * At the hearing on appellant's suppression motion and at trial, Lane, on direct examination, stated that he had seen appellant "many, many times," "since he was a kid," "more than a few hundred times." (N.T. S.H. 13–14, N.T. 42.) At trial, Lane testified that he had seen appellant "two or three days" before the incident (N.T. 42), yet at the suppression hearing he had stated that he could not recall the last time he had

* N.T.P.H. will be used to indicate notes of testimony at the preliminary hearing, N.T.S.H. notes of testimony at the suppression hearing, and N.T. notes of testimony at trial.

seen appellant before the attack: "Well it's [sic] just one of the kids on the corner. I couldn't determine which day I had seen him, he is one of twenty around there." (N.T. S.H. 25.)

On cross-examination Lane was less definite concerning his acquaintance with appellant. He testified that he had seen appellant "once or twice a week at least," (N.T. S.H. 70, N.T. 63) and "everyday just about" before the stabbing incident (N.T. S.H. 75). In other cross-examination testimony, however, he could not say that he had seen appellant "a couple of times the week of the incident." (N.T. S.H. 70.) In fact, it was "possible" that he had not seen appellant at all during the prior two months and he could not determine whether he had seen him at any time between May, 1973, and June, 1975, (N.T. S.H. 71–73), although he may have seen him "five or six times" during that two year period (N.T. 63). Both at the suppression hearing and at trial, Lane referred to appellant as "just a face in the crowd," "just a kid on the corner." (N.T. S.H. 76, N.T. 63.)

It is undisputed that at no time prior to the incident did Lane know appellant's name. (N.T. S.H. 83, N.T. 44, 63–64, 75.) Furthermore, Lane gave contradictory testimony throughout the preliminary hearing and trial concerning whether he was informed of appellant's name the day after the incident by his wife (N.T. 75) or by a police detective (N.T. S.H. 61) or whether he was unaware of appellant's name until the preliminary hearing (N.T. S.H. 65, N.T. 62). At one point, Lane testified that the morning after the robbery his wife informed him that "Laura Goodman's son" had stabbed him and that he responded "[w]hich one would do this to me?" (N.T. S.H. 83.)

Finally, some testimony concerned appellant's brother "Weasel." At the suppression hearing, Lane testified that Laura Goodman had three sons and that he knew all three of them "separate and apart." (N.T. S.H. 84.) He testified that appellant had a darker complexion and was younger than "Weasel." No information was offered about the third brother except that he was older than appellant. (N.T. S.H.

89.) On cross-examination at trial, Lane testified that appellant was the youngest of three brothers, but he was prevented from testifying as to the physical similarities, if any, between appellant and his brother. (N.T. 77–78.) On direct examination, appellant was precluded from describing his brother "Weasel," despite the fact that counsel stated at side bar that appellant would describe his brother as being "of the same height, weight, build and only two years of age differential. That information would at least be possible to show that it's not only the defendant who may have been capable of committing the act."[1] (N.T. 223.)

■ Based upon Lane's widely contradictory statements concerning his acquaintance with appellant, his lack of knowledge concerning appellant's name, and the fact that appellant had a brother who may have been close in appearance and age to appellant, appellant should have been permitted to examine Lane and to testify, himself, on the description of the brother. The trial court abused its discretion and violated appellant's constitutional right of confrontation[2] in precluding this line of questioning.

■ The scope of cross-examination is within the discretion of the trial court and the court's decision will not be reversed absent an abuse of discretion. *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624, 629 (1931); *Commonwealth v. Cheatham,* 429 Pa. 198, 203, 239 A.2d 293, 296 (1968); *Commonwealth v. Mickens,* 201 Pa.Super. 48, 55, 191 A.2d 719, 723 (1963). But to limit the scope of cross-examination so as to deny a defendant his or her right of cross-examination[3] " 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' *Brookhart v. Janis,* 384 U.S. 1, 3,

1. "Weasel" had been killed two weeks before trial began and no picture of him was available. (N.T. 222–226.)

2. U.S.Const., amend. VI; Pa.Const. art. I, § 9.

3. The rights of confrontation and cross-examination were made applicable to the States through the Fourteenth Amendment in *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

86 S.Ct. 1245, 16 L.Ed.2d 314; *Smith v. Illinois,* 390 U.S. 129, 131, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968)." *Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347, 355 (1974). *See, also Commonwealth v. Lopinson,* 427 Pa. 284, 300, 234 A.2d 552, 562 (1967), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2269, 36 L.Ed.2d 963 (1973).

■■■ In the instant case, appellant's counsel asked Lane to describe appellant's brother. The Commonwealth objected to the question and the court sustained the objection, stating that such cross-examination testimony was beyond the scope of direct examination. (N.T. 77–78.)[4] Our Supreme Court has stated that

. . . the right of cross-examination extends beyond the subjects testified to in direct testimony and includes the right to examine on any facts tending to refute "inferences or deductions" arising from matters testified to on direct.

*Commonwealth v. Lopinson,* supra at 427 Pa. 300, 234 A.2d 562 (1961); *Commonwealth v. Sweet,* 232 Pa.Super. 372, 377–378, 335 A.2d 420, 423–424 (1975). Every circumstance relating to the direct testimony of an adverse witness or relating to anything within his or her knowledge is a proper subject for cross-examination, including any matter which might qualify or destroy direct examination. *Commonwealth v. Mickens,* supra at 201 Pa.Super. 55, 191 A.2d 723 (1963). A trial court has a duty to protect a witness from questions which ". . . go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate . . .. [But the] trial court [abuses its discretion when it] cuts off in limine all inquiry on a subject with respect to which the defense was entitled to a reasonable cross-examination." *Alford v. United States,* supra at 282 U.S. 694, 51 S.Ct. 220, 75 L.Ed. 629.

■■■ Although Lane never testified on direct examination to a description of appellant's brother "Weasel," appellant

4. N.T. 78 is missing from the official record in this case. We accept the lower court's and appellant's reference to this page, however, as the correct citation for the basis of sustaining the objection.

attempted to build a defense theory on the basis of mistaken identification. Lane's testimony concerning his acquaintance with appellant was contradictory and confusing; he did not know appellant's name until some time after the incident; and appellant claimed to have a brother similar to himself in appearance and age. Appellant was entitled to pursue this line of questioning in order to "refute 'inferences or deductions'" arising from the direct testimony or to "qualify or destroy" the direct testimony relating to identification.

■ It does not matter that the jury may not have believed that Lane could have mistaken appellant for his brother. An issue similar to the one presented here arose in *Davis v. Alaska,* supra. There the Supreme Court held that the confrontation clause required that the defendant be permitted to impeach the credibility of a prosecution witness, a juvenile delinquent on probation, by cross-examining the witness to test the reliability of the identification he made. The court stated that although no speculation could be made as to whether the jury would have accepted this theory had counsel been permitted to present it, "the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness'] testimony which provided 'a crucial link in the proof . . . of petitioner's act.'" [Citation omitted.] *Davis v. Alaska,* supra, at 415 U.S. 317, 94 S.Ct. 1111, 39 L.Ed.2d 354. To require appellant to show that the cross-examination, if permitted, would have discredited the testimony in chief would be a denial of a substantial right and the withdrawal of one of the safeguards essential to a fair trial. *Alford,* supra at 282 U.S. 692, 51 S.Ct. 219, 75 L.Ed. 628.

It also does not matter that the testimony elicited on cross-examination may have developed appellant's own case in chief. *Commonwealth v. Cheatham,* supra at 429 Pa. 203, 239 A.2d 296. Here, however, not only did the court deny appellant the right to contribute to his defense through cross-examination, but also it deprived him of the right to

build a defense theory through his own direct testimony. (N.T. 222–226.) The trial court acknowledged that the issue of identification was one for the jury to decide, but sustained the Commonwealth's objection on the ground that appellant's testimony was self-serving. (N.T. 226.)

While it is undoubtedly true that appellant's testimony was self-serving, ". . . [A]ll persons [with certain exceptions herein inapplicable] shall be fully competent witnesses in any criminal proceeding before any tribunal." The Act of May 23, 1887, P.L. 158, § 1, 19 P.S. § 681; *Commonwealth v. Reginelli*, 208 Pa.Super. 344, 350, 222 A.2d 605, 608 (1966), *cert. denied*, 387 U.S. 945, 87 S.Ct. 2078, 18 L.Ed.2d 1331 (1967). Furthermore, appellant had a fundamental right to present defensive evidence so long as the evidence was relevant and not excluded by an evidentiary rule. *Commonwealth v. Greene*, 469 Pa. 399, 405, 366 A.2d 234, 237 (1976).

Our Supreme Court has twice reversed convictions on the ground that the trial court refused to admit certain defense evidence. In *Commonwealth v. Boyle*, the court found that the exclusion of evidence which might have shown the commission of a crime by one other than the defendant was admissible. 470 Pa. 343, 359, 368 A.2d 661, 669 (1977). There, W. A. "Tony" Boyle had been convicted of murdering Joseph Yablonski, his wife, and daughter. Prior to Boyle's trial, two others, Pass and Turnblazer also had been convicted of the murders. Boyle offered to prove that the accounts in District 19 of the United Mine Workers Union were irregular and that Yablonski had threatened to investigate the irregularities, thereby giving Pass and Turnblazer, but not Boyle, a motive for killing Yablonski. The Supreme Court found that the trial court's exclusion of this evidence deprived the jury of information concerning the independent motive of Pass and Turnblazer. It also deprived Boyle of the right to present relevant, material and competent evidence from which the jury might have inferred that Boyle

was not involved in the murders. *Commonwealth v. Boyle,* supra at 470 Pa. 359–361, 368 A.2d 669–670.

The court made a similar finding in *Commonwealth v. Bailey,* 450 Pa. 201, 299 A.2d 298 (1973). There, the defendant sought to call two witnesses who would testify that the chief prosecution witness (and husband of the deceased) was a money lender from whom they previously had borrowed. The trial court excluded the evidence as collateral and irrelevant. The Supreme Court, however, found that the testimony would have supported defendant's testimony concerning prior dealings with the witness and his reason for going to the witness' house. It also would have cast doubt on the witness' denial of his prior acquaintance with the defendant. A new trial was ordered. *Commonwealth v. Bailey,* supra at 450 Pa. 206, 299 A.2d 301.

The trial court has committed a similar error in the present case. Appellant attempted to raise a defense of misidentification by testifying as to the physical similarities between him and his brother. By excluding the evidence the trial court denied appellant the right to present "relevant, material and competent evidence" from which the jury could have inferred that appellant was not involved in the attack on Lane. Such testimony also may have cast doubt on the contradictory testimony Lane had given concerning his acquaintance with appellant. Accordingly, we find that the trial court abused its discretion in refusing to allow appellant to present this testimony in support of his defense.

Because we have held that the trial court denied appellant's constitutional right of confrontation and abused its discretion in unnecessarily limiting appellant's cross-examination of witness Lane and his own direct testimony, we need not decide the other issues presented by appellant. These errors mandate that we reverse appellant's conviction and remand this case for a new trial.

Conviction reversed and case remanded for proceedings not inconsistent with this opinion.