434 A.2d 740

**COMMONWEALTH of Pennsylvania,**

v.

**Johnnie HUTCHINSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 11, 1980.

Filed Aug. 28, 1981.

Petition for Allowance of Appeal Denied
March 8, 1982.

Dennis Kelly, Assistant Public Defender, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

Following a jury trial, appellant was convicted of five counts of robbery and one count each of possession of an instrument of crime and involuntary deviate sexual intercourse. Finding no merit in any of appellant's contentions, we affirm.

I.

Early in the afternoon of July 30, 1976, a man wearing a blue checked shirt and brandishing a gun robbed the West Oak Lane Medical Center and committed an act of involuntary deviate sexual intercourse upon one of the robbery victims. The man stole some credit cards, six car wash slips, and approximately eight hundred dollars. Two of the victims identified appellant as the perpetrator, whereupon the police successfully sought a search warrant for appellant's home. The probable cause section of the affidavit stated, in its entirety:

On 7/30/76 at approx. 1:30 P.M., a negro male later identified as Johnnie Hutchinson 22 N/M, res. 7426 Briar Rd. entered the West Oak La. Medical Center located at 7353 Limekiln Pk. This male produced the aforementioned gun and proceeded to rob the doctor, nurse and two patients.

Taken in this robbery was approx. $800 total from the victims, and also taken were approx. 6 car wash slips in the nameof [*sic*] Flourtown Car Wash.

On 7/30/76 at approx. 6:00 P.M., the Affiant displayed 50 or more photos to Complainants, Dr. Jack Solot and Phyllis Till. Each of the complainants identified Hutchinson without question as to the person responsible for this said robbery.

The subsequent search of appellant's home revealed, *inter alia*, a blue checked shirt matching that worn by the perpetrator and a .22 caliber gas pellet gun. These items were admitted into evidence at trial.

Appellant contends that the shirt and gun were inadmissible because the search warrant affidavit failed to aver that evidence could be found in his home and therefore did not establish probable cause to justify the search. The affidavit of probable cause must contain sufficient facts to permit a neutral and detached magistrate to conclude with reasonable certainty that a crime has been committed and that evidence or fruits thereof may be found on the premises to be searched. *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). In *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), the United States Supreme Court held that such applications should be read in a "commonsense and reasonable fashion" rather than with "[a] grudging and negative attitude . . . ." We agree with the lower court that the facts contained in the present affidavit formed a sufficient basis for the issuing authority to conclude that evidence from the robbery would be found in appellant's home. The affidavit stated that appellant had been positively identified by two of the victims. *See Commonwealth v. Garnett*, 458 Pa. 4, 7, 326 A.2d 335, 337 (1974); *Commonwealth v. Mamon*, 449 Pa. 249, 258, 297 A.2d 471, 476 (1972). Moreover, the items seized, a shirt and a gun, were each of a type reasonably likely to be found in the perpetrator's home, especially given the short period of time between the commission of the crimes and the application for the search warrant. In similar circumstances, courts have held it reasonable for an issuing authority to conclude that evidence would be found in the homes of suspects. *See United States v. Richard*, 535

F.2d 246 (3d Cir. 1976) (evidence seized pursuant to a search warrant admissible because the issuing magistrate could reasonably infer that evidence would be found at defendant's home from facts that he had been identified as the suspect, the premises to be searched were his home, the affidavit had been made shortly after commission of the crime, and likelihood that he would discard his clothing at home); *United States v. Lucarz*, 430 F.2d 1051 (9th Cir. 1970) (reasonable to infer that suspect would hide stolen mail in his home from the value of the mail and his opportunity to conceal it). *See also United States v. Picariello*, 568 F.2d 222 (1st Cir. 1978) (magistrate may infer presence of evidence at home of suspect from type of crime committed, nature of evidence sought, and opportunity for concealment); *United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976) (same). *Cf. United States v. Charest*, 602 F.2d 1015 (1st Cir. 1979) (unreasonable to infer that murder weapon would be found in suspect's home eighteen days after crime); *Commonwealth v. Heyward*, 248 Pa.Super. 465, 375 A.2d 191 (1977) (unreasonable to infer that stolen automobile title certificates would be located in suspect's home more than two years after theft). Consequently, the lower court properly concluded that the search warrant was supported by probable cause and that the shirt and gun were admissible.[1]

1. Appellant contends also that the shirt and gun were inadmissible because they had not been specifically identified in the warrant as items to be seized. We disagree. Although the shirt had not been listed in the warrant, it could be seized under the plain view doctrine because it had been found on appellant's bed. *Commonwealth v. Harris*, 479 Pa. 131, 138, 387 A.2d 869, 873 (1978). The gun, described in the warrant as a "large caliber blue steel revolver," was reasonably within the scope of that description and thus, properly subject to seizure. *See Government of the Virgin Islands v. Gereau*, 502 F.2d 914, 930 (3d Cir. 1974) ("description of 'rifles, shotguns, pistols . . .' should not be read over-literally as placing the machine gun beyond the warranted scope of the search"), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975). *Cf. Commonwealth v. Searles*, 450 Pa. 384, 387, 302 A.2d 335, 337 (1973) (notebook containing writing samples not within scope of warrant describing "check and check-writing equipment").

262

## II.

At trial, while the jury was in recess, appellant attempted to call his brother Larry Hutchinson to admit that he had committed the crimes with which appellant was charged.[2] When Larry invoked his privilege against self-incrimination, appellant sought to introduce alleged admissions against penal interest made by Larry on December 18, 1976, and January 6, 1977. Larry's first inculpatory statement was made to an investigator from the office of the public defender while that office represented both appellant and his brother. Upon discovery of its conflicting representation, the office of the public defender withdrew as Larry's counsel, whereupon the lower court appointed new counsel independent of that office. Before Larry could meet with his newly-appointed attorney, the defender took a second, nearly identical inculpatory statement which Larry subsequently signed. Although Larry knew that he was no longer represented by the defender when he made that statement, he was unaware of the existence of the attorney-client privilege. At appellant's trial, the lower court sustained an objection by Larry's attorney on the basis of attorney-client privilege and excluded both statements. Appellant now challenges that ruling on this appeal.

"Where legal advice of any kind is sought . . . from a professional legal adviser in his capacity as such, . . . the communications relating to that purpose, . . . made in confidence . . . by the client, . . . are at his instance permanently protected . . . from disclosure by himself or by the legal adviser, . . . except [if] the protection be waived." 8 J. Wigmore, Evidence § 2292 (McNaughton rev. 1961) (footnote omitted) (hereinafter cited as Wigmore). *See also*, Act of May 23, 1887, P.L. 158, No. 89, § 2(d), 19 P.S. § 686 ("Nor shall counsel be competent to testify to confidential commu-

---

2. *See Commonwealth v. Greene*, 445 Pa. 228, 285 A.2d 865 (1971) (although a witness may not be called before the jury solely for the purpose of having him invoke the privilege against self-incrimination and the inferences arising therefrom, court may take his testimony *in camera* to establish the basis for the asserted privilege); *Commonwealth v. Hackett*, 225 Pa.Super. 22, 307 A.2d 334 (1973) (same).

nications made to him by his client, or the client be compelled to disclose the same, unless in either case this privilege be waived upon the trial by the client.") (repealed and reenacted at 42 Pa.C.S.A. § 5916). The privilege, which attaches to statements made to a lawyer or his agents, *see, e. g., Dabney v. Investment Corp. of America*, 82 F.R.D. 464 (E.D.Pa.1979); *Goldstein v. Great Atlantic & Pacific Tea Co.*, 118 So.2d 253 (Fla.App.1960); Wigmore § 2301, survives the termination of the attorney-client relationship. *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp.*, 546 F.2d 530, 539 n. 22 (3d Cir. 1976), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977); Wigmore § 2323. *See also* Code of Professional Responsibility, Canon 4, and EC 4–6. The December 18, 1976 statement, made to an investigator from the defender's office during that office's representation of Larry Hutchinson, clearly was a privileged communication and, therefore, was properly excluded upon Larry's timely assertion of the attorney-client privilege. *See Commonwealth v. Trolene*, 263 Pa.Super. 263, 270, 397 A.2d 1200, 1204 (1979) (former client may assert privilege); *Commonwealth v. McKenna*, 206 Pa.Super. 317, 322, 213 A.2d 223, 226 (1965) (same).

■■■ Appellant argues, however, that the January 6, 1977 statement is not privileged because it had been made after the attorney-client relationship had ended. We disagree. A fundamental purpose of the attorney-client privilege is to foster full communication between an attorney and his client. *See* Wigmore § 2291. *See also* Code of Professional Responsibility, *supra* EC 4–1. That purpose must be read in the context of the lawyer's concomitant duty to preserve the confidences and secrets of his client. *Id.*, Canon 4. Disciplinary Rule 4–101 admonishes counsel not to reveal the confidences or secrets of his client, use them to the client's disadvantage, or use them to the advantage of a third person. *Id.*, DR 4–101(B). A lawyer may, of course, reveal a confidence or secret if the client consents after full disclosure. *Id.*, DR 4–101(C)(1). "A lawyer owes an obligation to advise the client of the attorney-client

privilege and timely to assert the privilege unless it is waived by the client." *Id.,* EC 4–4. In the instant case, the January 6, 1977 statement was a mere reiteration of a privileged statement. Moreover, the January 6, 1977 statement had been made without disclosure of the attorney-client privilege and before Larry could confer with his newly-appointed counsel. Under these circumstances, the lower court properly excluded the January 6, 1977 statement.[3]

### III.

▅▅▅▅▅ Appellant contends next that the lower court erred in excluding statements against penal interest which Larry allegedly made to Tracey Taylor on the night of the crime. We disagree. In *Commonwealth v. Hackett,* 225 Pa.Super. 22, 29, 307 A.2d 334, 338 (1973), we held that to be admissible, a declaration against penal interest must exculpate the defendant from the crime with which he is charged and bear sufficient indicia of reliability. *See also Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Moreover, only those admissions containing specific incriminating facts fall within the ambit of this exception to the hearsay rule. *Compare Commonwealth v. Weaver,* 274 Pa.Super. 593, 603, 418 A.2d 565, 570 (1980) *with Commonwealth v. Haberman,* 257 Pa.Super. 127, 132, 390 A.2d 279, 281 (1978). Ms. Taylor would have testified that Larry admitted on the night of the crime to having made a "beat" for six hundred dollars and that the term "beat" was understood in their community to refer to a robbery. Even if we were to assume that this declaration is sufficiently reliable, *but see Commonwealth v. Pompey,* 248 Pa.Super. 410, 375 A.2d 163 (1977) (declaration not made to a public official or one having an interest adverse to the declarant is inadmissible), Larry's statement to her did not contain specific facts

---

**3.** Appellant contends also that his testimony and that of another defense witness, Tracey Taylor, established that Larry had waived the attorney-client privilege. That contention is meritless because neither of them had been present while Larry made the privileged statements. *See* Wigmore §§ 2311, 2326 & n. 1, 2327.

inculpating him in the robbery of the medical center with which appellant was charged. When Ms. Taylor had been called to establish a waiver of the attorney-client privilege, see note 3, *supra*, she testified that she did not really know what Larry had meant when he made the declaration to her and that that had been his first occasion to use the term "beat" in conversation with her. Under those circumstances, the lower court properly excluded the declaration. *See Commonwealth v. Pompey, id.*, 248 Pa.Super. at 415, 375 A.2d at 165.[4]

## IV.

Appellant contends next that the lower court erred in refusing to allow the jury to view Larry Hutchinson. Appellant argues that such an exhibition would have allowed the jury to determine that he and his brother resembled one another and thus would have substantiated his claims of mistaken identity and alibi. We find no error in the lower court's ruling. Appellant presented no admissible evidence that his brother had committed the crimes with which he had been charged, and there was no evidence that the two brothers looked alike.[5] Moreover, the identification evidence already before the jury was quite positive. Under these circumstances, the lower court properly denied appellant's request to exhibit Larry to the jury. *Cf. Commonwealth v. Britton*, 251 Pa.Super. 335, 380 A.2d 807 (1977) (identifying witness' highly contradictory statements provided basis for allowing cross-examination and direct evidence

4. Appellant argues also that the lower court erred in excluding Larry's declaration against penal interest made to him while they had been incarcerated. The lower court properly excluded that evidence because the statement was not made under circumstances evidencing its reliability. *See Commonwealth v. Pompey, supra.*

5. Appellant mistakenly argues that the testimony of a robbery victim, Dr. Jack Solot, established a sufficient basis to warrant showing Larry to the jury. Contrary to appellant's assertion, Dr. Solot never testified that the brothers, in fact, resembled one another. Instead, he stated that although he had never seen Larry he had been told of him, and of the facts that the brothers resembled one another and that Larry was missing a front tooth.

concerning resemblance of defendant to his deceased brother).

### V.

As part of his alibi defense, appellant called his probation officer, Marilyn Monaco, to testify concerning his appearance on the day in question and to establish his whereabouts after the crime had been committed. Appellant requested that she be identified only as a court employee. The lower court ruled, however, that her status should be disclosed to the jury as evidence of her bias, interest, or prejudice in favor of appellant but that appellant would be entitled to a cautionary instruction. Additionally, the lower court permitted the Commonwealth to impeach Ms. Monaco concerning her interest as a probation officer in discouraging recidivism among her probationers.

Appellant argues that in permitting the disclosure of Ms. Monaco's status as appellant's probation officer, the lower court admitted evidence that he had committed other crimes. Even if we were to conclude that the jury could reasonably infer from the disclosure that appellant had committed other crimes,[6] appellant would not be entitled to a new trial because the cautionary instruction, directing the jurors not to consider the fact that appellant had been on probation as evidence of his guilt, removed any possible prejudical effect which may have been occasioned by the disclosure. *Commonwealth v. Povish*, 479 Pa. 179, 188, 387 A.2d 1282, 1287 (1978); *Commonwealth v. Williams*, 470 Pa. 172, 178, 368 A.2d 249, 252 (1977); *Commonwealth v. Whitfield*, 275 Pa.Super. 530, 533, 419 A.2d 27, 29 (1980).

6. *Compare Commonwealth v. Washington*, 488 Pa. 133, 137, 411 A.2d 490, 492 (1979); *Commonwealth v. Clark*, 453 Pa. 449, 453, 309 A.2d 589, 591 (1973); *Commonwealth v. Allen*, 448 Pa. 177, 180, 292 A.2d 373, 375 (1972); *Commonwealth v. Rivers*, 238 Pa.Super. 319, 322, 357 A.2d 553, 555 (1976) (reasonable for jury to infer that defendant had committed other crimes) *with Commonwealth v. Black*, 464 Pa. 604, 605, 347 A.2d 705, 706 (1975); *Commonwealth v. Whitfield*, 275 Pa.Super. 530, 533, 419 A.2d 27, 29 (1980) (not reasonable for jury to infer that defendant had committed other crimes).

 Appellant argues also that the lower court should have granted his motion for a mistrial because the Commonwealth's cross-examination of Ms. Monaco unduly emphasized his status as a probationer and the witness' possible interest in him. We disagree. A witness may be impeached by cross-examination tending to show that the witness' bias, interest or prejudice. *Commonwealth v. Hamm*, 474 Pa. 487, 500, 378 A.2d 1219, 1226 (1970). The scope of cross-examination is a matter within the discretion of the trial judge who will not be reversed absent a clear abuse of discretion or an error of law. *See, e. g., Commonwealth v. Greene*, 469 Pa. 399, 366 A.2d 234 (1976); *Commonwealth v. Schmidt*, 437 Pa. 563, 263 A.2d 382 (1970). We have reviewed the record thoroughly, and conclude that the lower court did not abuse its discretion in permitting the Commonwealth to impeach Ms. Monaco. Consequently, the lower court properly denied appellant's request for a mistrial.

## VI.

 Appellant contends finally that the lower court erred in ruling that he could be impeached with a 1972 conviction for aggravated robbery. The burden is upon the Commonwealth to establish that the need for impeachment outweighs the inherent potential for prejudice when it seeks to impeach a defendant with a prior conviction. *See Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978); *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973). In *Commonwealth v. Roots*, our Supreme Court held the following factors relevant in balancing the competing interests of the Commonwealth and the defendant:

1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; 2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstanc-

es of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.

482 Pa. at 39, 393 A.2d at 367 (footnote omitted). Once the lower court has weighed the competing factors, its decision to permit impeachment with a prior conviction will not be reversed absent an abuse of discretion. *Commonwealth v. Roots, id.*, 482 Pa. at 41, 393 A.2d at 368. Appellant argues that the lower court improperly weighed the competing factors because the Commonwealth had a strong case and his testimony was crucial to his defense. We disagree. Appellant presented his alibi defense through the testimony of four other witnesses. His own testimony would have merely been cumulative. Under similar circumstances, this Court found impeachment proper when a defendant was able to present his alibi defense through the testimony of four other witnesses. *Commonwealth v. Flores*, 247 Pa.Super. 140, 146–47, 371 A.2d 1366, 1369–1370 (1977). *Cf. Commonwealth v. Cooke*, 267 Pa.Super. 34, 40, 405 A.2d 1290, 1293 (1979) (defendant had several eyewitnesses); *Commonwealth v. Quartman*, 253 Pa.Super. 460, 465, 385 A.2d 429, 432 (1978) (defendant presented his defense through testimony of other witnesses); *Commonwealth v. Campbell*, 244 Pa.Super. 505, 509, 368 A.2d 1299, 1301 (1976) (defendant called other witnesses to show that he did not commit the crime). Consequently, the lower court did not abuse its discretion in ruling that appellant could be impeached with his prior robbery conviction.[7]

Judgment of sentence affirmed.

7. Appellant argues also that his testimony was necessary to establish Larry's declaration against penal interest. As noted above, see note 4, *supra*, that evidence was inadmissible. Consequently, the lower court did not abuse its discretion in permitting appellant to be impeached by his prior robbery conviction.