## In re: INVESTIGATING GRAND JURY

**Appeal of: Samuel C. Stretton, Esquire**

Superior Court of Pennsylvania.

Argued Aug. 30, 2005.

Filed Nov. 1, 2005.

Reargument Denied Dec. 29, 2005.

Samuel C. Stretton, appellant, Pro Se.

A. Sheldon Kovach, Assistant District Attorney, Media, for Commonwealth, appellee.

Before: KLEIN, PANELLA and KELLY, JJ.

OPINION BY KLEIN, J.:

¶ 1 Samuel C. Stretton, Esquire, was held in contempt of court for invoking the attorney-client privilege regarding statements made to him by a former client and for refusing to testify before a grand jury. We hold that even after formal representation ends, a lawyer retains a professional relationship with the client and unless it is made clear that there is no confidentiality in the communication, the attorney-client privilege remains. Accordingly, we reverse.

¶ 2 Attorney Stretton was privately retained and represented "Mr. Y," who was convicted of first-degree murder, kidnapping, rape, and robbery and sentenced to death. "Mr. Y" was upset with the result and Attorney Stretton's representation. A direct appeal to the Pennsylvania Supreme Court was filed in February 1983, and on April 28, 1983, Attorney Stretton filed a motion to withdraw, which was granted on May 10, 1983. The Office of the Public Defender was appointed to represent "Mr. Y" on appeal.

¶ 3 In the course of the appeal, the matter was remanded for new counsel to pursue ineffectiveness claims against Attorney Stretton. In that 1984 hearing, for the purpose of defending against the ineffectiveness charge, the trial judge ruled that the attorney-client privilege did not apply.

¶ 4 In September 2003, because advanced DNA testing results were exculpatory, upon the parties' joint request, the sentence was vacated. Later, the case was *nol prossed,* and "Mr. Y" was released.

¶ 5 Suspecting that "Mr. Y" made inculpatory statements to Attorney Stretton in a telephone call from prison *after* Attorney Stretton was relieved as counsel, the Commonwealth re-investigated these charges before a grand jury. Attorney Stretton was subpoenaed to appear before the grand jury. There, he invoked the attorney-client privilege and refused to testify as to what he was told by "Mr. Y." There is no indication that "Mr. Y" ever waived the privilege. The trial court ultimately found him in contempt and fined him $100 per day to accrue from October 2004. It was understood that if it is ultimately determined through this litigation that Stretton must testify and in fact he does, then the fine will be remitted.

¶ 6 The Commonwealth notes, and we agree, that this appears to be a case of first impression in Pennsylvania. The Commonwealth takes the position that once the formal representation ends, any statement by a former client is not made in the course of seeking legal assistance and, therefore, is not privileged. In this particular case, "Mr. Y" was angry with Attorney Stretton, knew that Attorney Stretton no longer represented him, and thus the conversation did not involve a client seeking legal advice from his lawyer.

¶ 7 The Commonwealth acknowledges that due to public policy considerations, all confidential communications and disclosures made by a client to his lawyer in the course of obtaining professional aid or advice is strictly privileged. *Commonwealth v. Maguigan,* 511 Pa. 112, 511 A.2d 1327, 1334 (1986). The Commonwealth contends, however, that the privilege is limited to confidential communications made in connection with the provision of legal services, and that was not the purpose of the instant conversation. *See Commonwealth v. duPont,* 730 A.2d 970, 977 (Pa.Super.1999).[1] Therefore, the

---

1. We note that *duPont* was a far different    situation. There were no confidential com-

Commonwealth argues that the communication did not relate to a fact that would be of any assistance in a legal proceeding. *See Maguigan, supra; Commonwealth v. Noll,* 662 A.2d 1123, 443 Pa.Super 602, 607–08 (1995); *Brennan v. Brennan,* 281 Pa.Super. 362, 422 A.2d 510, 515 (1980). The Commonwealth also points out that even if the Code of Professional Conduct prevented an attorney from revealing a communication, that is not binding on our courts, and there would be no violation if the *court* orders the attorney to testify as to the communications.

¶ 8 Attorney Stretton argues that the privilege should be read broadly and notes that the burden of proof is on the Commonwealth to show an absence of privilege. *See Maguigan, supra.* Not only is there a common law privilege, but the privilege also has been adopted by statute, as follows:

> In a criminal proceeding counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. § 5916.

¶ 9 Moreover, while not completely binding in criminal trials, the Rules of Professional Conduct preclude a lawyer from revealing "information relating to representation of a client." *See* Pa.R.Prof.Conduct 1.6. There seems to be no question that the conversations at issue here "related" to Attorney Stretton's prior representation of "Mr. Y."

¶ 10 Attorney Stretton asserts that while the conversation probably occurred after his representation formally ended, it is not

clear whether "Mr. Y," who was incarcerated, had communicated yet with his new lawyer before calling Stretton. In any event, Attorney Stretton had been his counsel for some time and was relieved of representation, at most, a few months before the telephone call.

¶ 11 It is undisputed that the conversation was about the case. "Mr. Y" was upset with both the representation and the result. Although "Mr. Y" had called to express his anger toward Attorney Stretton, the conversation nonetheless revolved around the case. While Attorney Stretton never told "Mr. Y" that the conversation was privileged, he also did not tell him that the conversation was *not* privileged. Attorney Stretton maintains that the conversation was privileged and that, in his view, "Mr. Y" also believed it was confidential.

¶ 12 Not every lawyer-client conversation takes place in the context of formal representation. Often clients consult lawyers to see if the lawyer is willing to represent them and if they want to retain the lawyer. Those conversations are privileged.

¶ 13 A case does not automatically end simply because there is a change in lawyers. It is the obligation of a lawyer to continue to cooperate with new counsel. It would not advance public policy to provide that absent a formal contract of representation, legal matters discussed between an attorney and someone seeking legal advice are privileged unless it is clear that there is no lawyer-client relationship and it is just a casual conversation.

¶ 14 As Attorney Stretton aptly argued in his brief:

> ... Any attorney who represents clients on a regular basis recognizes that clients

munications involved in that case, only a consultation between counsel and psychiatrists four years before the shooting in question to

see how best to obtain an evaluation of DuPont's mental health. 730 A.2d at 976–77.

will call even after their cases have concluded and the file is in storage. A client will call and talk to the lawyer sometimes generally and sometimes about issues of the prior representation. [Mr. Y] did the same. Clients expect that these calls are confidential. Unless the lawyer indicates to the contrary, these conversations should and must be treated as confidential.

\* \* \* \* \* \*

... The real world does not recognize a complete break of the privilege with the appointment of new counsel. There is no straight line in real world representation.... Further, the former client should be allowed to discuss and speak with his attorney about the representation even if it is to express displeasure[,] with the privilege remaining intact. If the attorney does not want the conversation to be privileged, then it is the attorney's obligation to advise the client. No such advice was ever given.

\* \* \* \* \* \*

If a former client cannot call to discuss their previous case and/or cannot call an attorney and expect confidentiality on other matters, there would be a major problem. People often call the lawyer who previously represented them for advice. Because there has been a prior representation, the client assumes that the matter is still confidential. Without the lawyer indicating to the contrary, the confidentiality must be maintained.

(Appellant's Brief at 25–27.)

¶ 15 In reaching our decision, we are mindful of *Commonwealth v. Hutchinson,* 290 Pa.Super. 254, 434 A.2d 740 (1981), which appears to be the only Pennsylvania case involving a similar issue. In that case, Hutchinson made a privileged statement to an investigator from the public defender's office while that office repre-

sented him. After the public defender's office withdrew, but before Hutchinson had the opportunity to confer with his newly appointed counsel, he repeated the statement to the public defender. The *Hutchinson* Court upheld the privilege under those circumstances. The Court noted that Hutchinson had reiterated a previous statement made during the representation. The Court also relied on the facts that Hutchinson had not yet spoken to his new counsel and the public defender never told him that the statement was not privileged. *Id.* at 744–45. Thus, while *Hutchinson* is not exactly on point, its holding is consistent with our decision today.

¶ 16 Because of the strong public policy encouraging clients to talk freely with their attorneys, the fine line between when there is or is not representation is often not known to clients. Here, "Mr. Y" had paid Attorney Stretton to represent him and had worked with him for many months. He likely believed that as his case was continuing, he had the ability to hash things out with Attorney Stretton that could be used to his advantage in future representation with another lawyer. It was reasonable for "Mr. Y" to believe that because of their prior relationship, confidentiality remained between them.

¶ 17 Under these circumstances, we conclude that Attorney Stretton appropriately invoked the attorney-client privilege and should not be held in contempt.

¶ 18 Order reversed.