J-E01004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRUCE M. REESE | |
| Appellant | No. 52 EDA 2013 |

Appeal from the Judgment of Sentence of November 20, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0013539-2011

BEFORE:  BOWES, J., DONOHUE, J., SHOGAN, J., LAZARUS, J., MUNDY, J.,
OLSON, J., WECHT, J., STABILE, J., and JENKINS, J.

CONCURRING AND DISSENTING MEMORANDUM BY WECHT, J.:**FILED JUNE 23, 2015**

Among the claims raised by Bruce Reese in this case is his contention that the search warrant that was executed on his residence was not supported by probable cause because the information contained within the four corners of the affidavit did not establish a factual nexus between the crime committed on the street and his residence.  Today's learned Majority concludes that Reese has waived this claim because, *inter alia*, he abandoned that claim in his brief to the initial three-judge panel of this Court.  **See** Maj. Mem. at 6-9.  I have reviewed that brief, and I agree with the Majority that Reese has waived this claim.

That determination should end our review of that claim.  The Majority nonetheless elects to address the merits of the claim, even though it concluded that Reese had not preserved that issue for our review.

Ultimately, the Majority concludes that, had the issue been preserved, Reese still would not have been entitled to relief. The Majority's insistence on reviewing the waived claim compels me to dissent from, and to reject on the merits, that alternative discussion.

The relevant facts of this case are relatively few in number. Reese and another man robbed four men at gunpoint on a West Philadelphia Street. Reese wielded the gun during the robbery. Reese was identified by at least one person on the scene. The three other victims identified Reese as the perpetrator from a photo array. Two days after the robbery occurred, police obtained and executed a search warrant on Reese's residence, which was not the location where the robbery had occurred. During the search, police found, *inter alia*, a black handgun, which turned out not to be a real firearm.

In a pretrial suppression motion, Reese sought to suppress the evidence recovered during the execution of the search warrant. At the hearing on the motion, Reese argued that the warrant was not supported by adequate probable cause because the police did not establish a factual nexus between the crime committed on the street and his residence. The trial court denied the motion. On direct appeal, a panel of this Court reversed the trial court's suppression order. We granted *en banc* review. As noted earlier, the present Majority, after finding the issue waived, explains that the warrant in fact was supported by probable cause. I disagree with that latter conclusion.

The legal standards governing our review of this issue are well-established:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. ***Commonwealth v. Bomar***, 826 A.2d 831, 842 (Pa. 2003). Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the law to the facts." ***Commonwealth v. Mistler***, 912 A.2d 1265, 1269 (Pa. 2006) (quoting ***Commonwealth v. Nester***, 709 A.2d 879, 881 (Pa. 1998)). Thus, the conclusions of law of the courts below are subject to our plenary review.

*    *    *

> Article I, Section 8 [of the Pennsylvania Constitution] and the Fourth Amendment [to the United States Constitution] each require that search warrants be supported by probable cause. "The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause." ***Commonwealth v. Edmunds***, 586 A.2d 887, 899 (Pa. 1991) (quoting ***Commonwealth v. Miller***, 518 A.2d 1187, 1191 (Pa. 1986)). "Probable cause exists where the facts and circumstances within the affiant's knowledge[,] and of which he has reasonably trustworthy information[,] are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." ***Commonwealth v. Thomas***, 292 A.2d 352, 357 (Pa. 1972).
>
> In ***Illinois v. Gates***, 462 U.S. 213 (1983), the United States Supreme Court established the "totality of the circumstances"

- 3 -

test for determining whether a request for a search warrant under the Fourth Amendment is supported by probable cause. In **Commonwealth v. Gray**, 503 A.2d 921 (Pa. 1986), [the Pennsylvania Supreme Court] adopted the totality of the circumstances test for purposes of making and reviewing probable cause determinations under Article I, Section 8. In describing this test, we stated:

> Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in **Gates**, the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons who supply hearsay information, **there is a fair probability that contraband or evidence of a crime will be found in a particular place**. . . . It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

> \* \* \*

> **Commonwealth v. Torres**, 764 A.2d 532, 537-38 (Pa. 2001) (emphasis added).

**Commonwealth v. Jones**, 988 A.2d 649, 654-55 (Pa. 2010) (internal citations modified).

Our precedents require the Commonwealth to establish probable cause not only for the person suspected of criminal activity, but also for the premises to be searched:

> Probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home. . . . [A]n allegation based on an assumption or

supposition not supported by the facts is insufficient to support (an inference of) criminal activity in a premises, in spite of the fact that there are plenty of allegations alleged to relate to criminal activity of the individual who is alleged to have lived in the premises.

*Commonwealth v. Kline*, 335 A.2d 361, 364 (Pa. Super. 1975); *see Commonwealth v. Way*, 492 A.2d 1151, 1154 (Pa. Super. 1985) ("[T]he lack of a **substantial nexus** between the street crime and the premises to be searched renders the warrant facially invalid." (emphasis added)). Additionally, a magistrate's determination of probable cause "must be based [up]on facts described within the four corners of the supporting affidavit." *Commonwealth v. Dukeman*, 917 A.2d 338, 341 (Pa. Super. 2007) (citing *Commonwealth v. Smith*, 784 A.2d 182, 184 (Pa. Super. 2001)).

The November 14, 2011 affidavit of probable cause in this case primarily recites the events of the robbery and describes the complainants' respective identifications of Reese. There is only one paragraph discussing the premises to be searched, which reads as follows:

> [Reese] has [eight] prior arrest[s] in Philadelphia and list[s] 413 N Edgewood for [six] of the arrest[s]. While being interviewed . . . [Harrison] informed [Detective] Mullen that during the afternoon hours of 11/13/11 he encountered the cousin of [Reese], a male he knows as Kyle Bentley, outside of 5700 Belmar. [Harrison] stated [that Bentley] informed him that [Reese] is residing in West Philly. The address of 413 N Edgewood is in the West Philadelphia area. On 4/27/11[, Reese] was released from prison. The prison release information list[s Reese's] address as 1413 N Edgewood. This address listing appears to be a typographical error. There are no connections for [Reese] to 1413 N Edgewood at all.

Continuation of Probable Cause for Search Warrant #161856, 11/14/2011, at 1. Stated simply, there is no information within the "four corners" of the affidavit of probable cause establishing any "nexus" between Reese's address and the instant robbery. **Way**, *surpa*. There **are** ample facts in the affidavit to establish both Reese's identity and that Reese resides at 413 North Edgewood Street. However, the affidavit offers no factual basis for concluding that Reese's putative residence was connected to this robbery in any way. Although the affidavit offered significant factual bases for concluding that Reese was a perpetrator, "[p]robable cause to believe that a man has committed a crime does not necessarily give rise to probable cause to search his home." **Way**, 492 A.2d at 1154.

This Court's reasoning in both **Kline** and **Way** is highly instructive.[1] In **Kline**, the police obtained a search warrant for an apartment after

_____

[1] Subsequent decisions have distinguished somewhat our holding in **Kline** and, by extension, **Way**. Specifically, this Court has enumerated several types of evidence that are sufficient to establish the "substantial nexus" between the place to be searched and the evidence to be seized. **See Commonwealth v. Davis**, 595 A.2d 1216, 1220-22 (Pa. Super. 1991) (holding that confidential informant's observation of a defendant coming and going from a specific house between three different narcotics' sales established "probable cause to believe that the objects sought . . . would be found in [the defendant's] home."); **Commonwealth v. Macolino**, 485 A.2d 1134, 1136-38 (Pa. Super. 1984) (holding that police established probable cause to search a home, when the affidavit of probable cause contained information from wiretapped conversations emanating from the house discussing narcotics trafficking, and police surveillance of the property, wherein the defendant was observed coming and going from that house while meeting with a known narcotics supplier); **Commonwealth v.**
*(Footnote Continued Next Page)*

eyewitness complainants identified the defendant as a drug dealer and indicated that the defendant lived in that particular apartment. Specifically, three different informants stated that they had purchased drugs from the defendant in the preceding week. Although the complainants stated that the defendant kept the drugs that he sold in his apartment, there was no factual basis in the affidavit to support that claim:

> [The suppression court] suppressed the evidence seized pursuant to the warrant because [the suppression court] concluded that although the affidavit contained facts sufficient to establish that [the defendant] was indeed dealing in drugs and lived in the apartment described, it did not contain facts sufficient to establish the basis [up]on which the several informants . . . had concluded that [the defendant] had gone to his apartment to get the drugs.

*Kline*, 335 A.2d at 362-63. On appeal, this Court upheld the suppression court's ruling, stating that assumptions regarding the premises to be searched are insufficient to establish probable cause:

---

*(Footnote Continued)* ─────────────────

*Frye*, 363 A.2d 1201, 1204 (Pa. Super. 1976) (holding that a defendant's admission may form the basis for establishing probable cause to search a specific locale, stating that "the nexus between the evidence to be seized and the place to be searched was provided by Frye's admission that he was conducting at least part of his unlawful operations from his home.").

I read these cases as standing for the general proposition that, while the Commonwealth must establish a nexus between the place to be searched and the items to be seized, that burden is not meant to be harshly interpreted. However, the central holding of *Kline* and *Way* – that mere evidence of a suspect's criminal activity and the location of his residence does not establish probable cause to search that residence – remains in force.

Here, as far as appears from the affidavit, none of the informants said where the [drugs were.] The [informants] apparently concluded that [the drugs were] in [the defendant's] apartment. However, an affidavit must set forth how information leading to such a conclusion was obtained. **Commonwealth v. Ambers**, 310 A.2d 347, 350 (Pa. Super. 1973); **Commonwealth v. Soychak**, 289 A.2d 119, 124 (Pa. Super. 1972). There is no indication of where the transaction took place, how long it took, how long [the defendant] was gone, or what led the [informants] to conclude that [the defendant] had gone to his apartment. The information from the confidential informants does not corroborate their conclusion that [the defendant] kept drugs in his apartment, even though it does tend to establish that [the defendant] was a drug dealer.

*Id.* at 364 (internal citations modified). Thus, the mere fact that an affidavit of probable cause tends to establish the criminal activity of a defendant, and the location of his home, does not provide probable cause to support the issuance of a search warrant for that home.

In **Way**, this Court relied upon **Kline** to suppress evidence seized pursuant to a search warrant in another narcotics case:

The facts fairly summarized are that the informant arranged a drug transaction by phone. The alleged transaction occurred in a blue van along a country road. After the alleged transaction, police followed the blue van to a driveway of a property at the corner of Douglas Dr. and Glendale Rd. The informant identified appellant as the driver of the blue van. A police source told the affiant that appellant lived at the intersection of Douglas Dr. and Glendale Rd.

**Way**, 492 A.2d at 1154. The trial court concluded that the search warrant was supported by probable cause. On appeal, this Court reversed, concluding that, "within the four corners of the affidavit, we fail to find

sufficient facts to permit an issuing authority reasonably to conclude that there was contraband in the premises to be searched." ***Id.***

Turning to the instant case, examining the totality of the circumstances, and considering only the evidence adduced by the Commonwealth and the uncontradicted evidence of the defense, there are no factual averments in the affidavit that establish any "nexus" between Reese's home and the instant crime. Within its four corners, the affidavit establishes only probable cause to believe that Reese committed the robbery and lived at the subject residence. Consequently, ***Kline*** and ***Way*** are analogous to the present case: "[T]he lack of a substantial nexus between the street crime and the premises to be searched renders the warrant facially invalid." ***Way***, 492 A.2d at 1154; ***see Kline***, 335 A.2d at 364.

Other than a lone citation to ***Kline*** for establishing a general principle of law, the Majority pays no attention to the details of ***Kline*** or ***Way***, or to the principle that emerges from those binding cases: that identity of the perpetrator and knowledge of his residence does not amount to probable cause to support a warrant to search a suspect's residence. The police must set forth facts in the affidavit to establish a nexus between the crime and the residence. Here, as in those cases, the information contained in the affidavit of probable cause establishes only identity and the location of Reese's purported residence. Per ***Kline*** and ***Way***, this is simply insufficient to establish probable cause.

- 9 -

The Majority pays lip service to the nexus requirement, but then skims through that essential inquiry by relying upon the fact that the police requested permission to search for, among other things, a gun, and upon the speculative assumption that guns are items that typically are kept in one's home. **See** Maj. Mem. at 14. The Majority rests its conclusion on a single case: **Commonwealth v. Hutchinson**, 434 A.2d 740 (Pa. Super. 1981). However, **Hutchinson** is too imprecise to be considered controlling in this case.

On July 30, 1976, Hutchinson robbed four people in front of a medical center. **Id**. at 742. At the time of the robbery, Hutchinson was wearing a blue checked shirt and wielded a firearm. Two of the victims identified Hutchinson from a photograph. At an unknown time, police obtained and executed a search warrant on Hutchinson's home, which resulted in the recovery of a blue checked shirt and a .22 caliber pellet gun. **Id.**

Hutchinson challenged the constitutionality of the search warrant, alleging that the warrant was not supported by adequate probable cause due to the police's failure to aver any facts to establish that evidence of the robbery in front of the medical center would be found inside his home. **Id**. at 742-43. This Court disagreed, noting that "the items seized, a shirt and a gun, were each of a type reasonably likely to be found in the perpetrator's home, **especially given the short period of time between the commission of the crimes and the application for the search**

**warrant**." ***Id.*** at 743 (citing ***United States v. Richard***, 535 F.2d 246 (3d Cir. 1976)) (emphasis added). Conspicuously absent from the ***Hutchinson*** opinion is any indication as how much time had passed between the crime and the application for the warrant, aside from the vague declaration that a "short period of time" had elapsed.

The Majority readily acknowledges that ***Hutchinson*** does not elaborate in any way on how much time had elapsed, or what constitutes a short period of time. ***See*** Maj. Mem. at 13. Nonetheless, the Majority concludes that the two days that elapsed between the robbery and the execution of the warrant in the case *sub judice* falls within the "short period of time" window. In other words, despite not knowing what constitutes a short period, the Majority determines that what happened in this case falls within that window, a curious conclusion to say the least. ***Hutchinson*** does not define the parameters of the inquiry, yet the Majority finds that this case falls within those parameters. It is for this reason that I would not apply ***Hutchinson*** to this case. It simply is too imprecise in its reasoning to provide useful guidance to other cases, including this one.

Moreover, ***Hutchinson*** and the Majority's application of ***Hutchinson*** raise more questions than are answered. What if the time period between the crime and the warrant in ***Hutchinson*** was only eight hours? If the ***Hutchinson*** Court believed that eight hours was a "short period of time," would it feel the same about two days? Where lies the outer boundary of a

"short period of time?" Three days? A week? *Hutchinson* is too vague to allow its application to this case with any degree of reliability or certainty, and certainly too vague to hold that it absolutely controls this case. I would rely upon the more precedentially sound and secure footing of *Kline* and *Way*, and would hold that identification of a suspect and location of residence is an insufficient nexus to establish probable cause to search a home at which the crime was not committed. And, even if *Hutchinson* were controlling, I would not find two days to be a "short period of time."

I also reject the general proposition that police can establish the relevant nexus based only upon the type of item involved. That one person typically stores a gun in his home is not probable cause that someone else will do so. Probable cause is based upon facts and assertions, not upon surmise and unjustified assumptions. *Hutchinson* does not require me, or this Court, to make that assumption. Although *Hutchinson* noted that a gun is an item typically stored in a person's home, that assumption did not alone establish probable cause in the Court's view. That assumption was tethered to the fact that only a "short period of time" had elapsed since the commission of the crime. However, as I noted above, without discernible boundaries for what constitutes a "short period of time," I would not apply *Hutchinson* strictly and would not hold that two days is in fact a "short period of time." Absent such a holding, *Hutchinson* does not require that we find probable cause merely because of the unsupported assumption that

people typically store guns in their homes, particularly guns that have been used during the commission of a crime.

To hold otherwise would eliminate the nexus requirement set forth in *Kline* and *Way*. Most people store items of importance to them in their homes. Thus, police would never have to demonstrate that a person actually has stored the item used in the crime in their home. In other words, no longer would the police have to establish a factual nexus between the crime and the residence. Law enforcement officers only would have to aver that the item for which they are searching for is one of the thousands upon thousands of items that people normally store in their homes. Notably, even if this were all that were required, the police in the instant case did not even offer this minimal averment. Instead, the Majority makes this assertion for them.

In sum, I agree with the Majority that Reese has waived the relevant claim implicated in this appeal. If I were the author of the majority memorandum, I would go no further. However, today's Majority discusses, erroneously, the merits of the claim. Because the Majority does so, I am compelled to respond. I would hold that the police failed to establish probable cause to search Reese's home because they did not aver, let alone establish, a factual nexus between the crime on the street and Reese's home. Hence, I concur with the Majority's waiver discussion, but I dissent from its discussion of the merits.