J-A01035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM THOMPSON | |
| Appellant | No. 887 EDA 2014 |

Appeal from the Judgment of Sentence January 9, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002719-2013

BEFORE:  LAZARUS, J., OTT, J., and STEVENS, P.J.E.*

MEMORANDUM BY LAZARUS, J.:                    **FILED APRIL 26, 2016**

William Thompson appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following a non-jury trial in which Thompson was convicted of robbery,[1] theft by unlawful taking,[2] receiving stolen property,[3] criminal mischief-tampering with property,[4] and

_____

[1] 18 Pa.C.S. § 3701(a).

[2] 18 Pa.C.S. § 3921(a).

[3] 18 Pa.C.S. § 3925(a).

[4] 18 Pa.C.S. § 3304(a)(2).

*Former Justice specially assigned to the Superior Court.

criminal mischief.[5]  After our review, we affirm based on the opinion of the Honorable Roxanne Covington, dated May 5, 2015.[6]

Benjamin Rothstein owned the property at 418 W. Spencer Street in Philadelphia, where Thompson, who was Rothstein's former foster son, resided.  Because Thompson had not been paying his bill, a Philadelphia Gas Works employee and Rothstein arrived at the property on February 12, 2013, in separate vans, to shut off the gas.  While Rothstein was in his van, Thompson and his girlfriend came out of the house; Thompson threatened Rothstein, screaming that he was going to "f--- [Rothstein] up" and damage the house so no one else could live in it.  N.T. Trial, 11/19/13, at 16. Someone, either Thompson or his girlfriend, threw a rock at Rothstein's van, at which point Rothstein called 9-1-1.  Thompson grabbed the driver's side door and tried to open it, and when he could not, he kicked the van, denting the van and breaking the driver's side-view mirror. He also tried to rip off the license plate frame.  In total, Thompson caused $3,300 worth of damage to the van.  Thompson then went to the passenger side of the van, which was unlocked, and reached in and grabbed Rothstein's wrist and took the wallet from Rothstein's hands.  He threw Rothstein's wallet onto the roof of a

_____

[5] 18 Pa.C.S. § 3304(a)(4).

[6] In response to Thompson's Application for Relief, this Court entered an order on February 13, 2015 directing the trial court to file its Pa.R.A.P. 1925(a) opinion and certify and transmit the record within thirty (30) days. The court's opinion was not filed until May 5, 2015.

nearby building. When Rothstein later retrieved his wallet, his cash (between $80 and $100) and one of his credit cards were missing.

Following a bench trial before the Honorable Roxanne Covington, Thompson was convicted of the foregoing charges and sentenced to twenty (20) to forty (40) months' incarceration, followed by three years' probation. Thompson filed post-sentence motions, which were denied. This timely appeal followed.

On appeal, Thompson raises ten issues:

1. Did the trial court err in precluding cross-examination on several issues, specifically stating it was precluding counsel from making a record?

2. Did the trial court err in precluding the defendant from even making a record during [the] sentencing hearing?

3. Did the trial court err in precluding any inquiry or even making a record as to the complainant's own statements to the police regarding his motives to be [at] the defendant's residence, his intent on evicting defendant?

4. Did the trial court err in precluding cross-examination of Ben Rothstein, the Commonwealth's only witness, as to prior financial dealing between the parties, and why defendant was living in Rothstein's 418 Spencer Street property?

5. Did the trial court err in denying defendant his right to confront his accuser and cross-examine Rothstein on the eviction, the long term financial dealings, Rothstein's motive to lie, and bias?

6. Did the trial court err in denying defendant his due process rights, thereby prejudicing his right to a fair trial, which constitutional errors were so fundamentally unfair and in direct contravention of long established evidentiary case law as to evidence a judicial bias against Mr. Thompson?

7. Did the trial court abuse its discretion when it precluded full and complete cross-examination of Ben Rothstein about all

issue of financial interest, prior financial dealings, and monetary claims between the only two trial witnesses so as to permit defendant to make a record of the Commonwealth's sole witness' motive to lie and bias on the witness stand?

8. Did the trial court abuse it discretion when it precluded (by sustaining Commonwealth's relevancy objections during defendant's testimony) the defendant from testifying about all issues of financial interest, prior financial dealings, and monetary claims between the only two trial witnesses so as to establish the Commonwealth's sole witness' motive to lie and bias against the defendant?

9. Are the trial court's errors of constitutional nature because they denied defendant his right to confront his accuser guaranteed by Article I, section 9 of the Pennsylvania Constitution?

10. Are the trial court's errors of constitutional nature clear and obvious reversible error?

Appellant's Brief at 9-10.

Thompson argues that the trial court abused its discretion when it precluded cross-examination of Rothstein regarding issues of "motive, bias and credibility." Appellant's Brief, at 12. Each of Thompson's issues challenges the court's exclusion of evidence regarding the nature of the relationship between him and Rothstein. The trial court allowed Thompson to establish the fact of an ongoing financial dispute between him and Rothstein. The trial court restricted the scope of Thompson's cross-examination of Rothstein, concluding that the details of their acrimonious financial relationship were immaterial to the criminal case before the court. Even if Thompson had a right to be in the house on Spencer Street on

February 12, 2013, that, in addition to their financial disputes, were immaterial to Thompson's criminal behavior on that date.

The extent to which a witness may be cross-examined and the subject matter of the cross-examination are matters within the sound discretion of the trial judge; we will not overturn the court's decision absent an abuse of discretion. *Commonwealth v. Fletcher*, 861 A.2d 898 (Pa. 2004); *Commonwealth v. Cheatham*, 239 A.2d 293, 296 (Pa. 1968); *see also Commonwealth v. Britton*, 380 A.2d 807 (Pa. Super. 1977). A trial court has discretion to determine both the scope and the permissible limits of cross-examination. *Commonwealth v. Rivera*, 983 A.2d 1211, 1230 (Pa. 2009).

We find no abuse of discretion here. The court allowed Thompson to demonstrate the existence of a financial dispute with Rothstein, in particular a failed real estate deal involving $25,000, but did not permit cross-examination on the details of that matter or the details of the history of their relationship. The court was within its discretion to keep the testimony focused on the criminal matter before it. We agree with the trial court's finding that Thompson's requested cross-examination was irrelevant under the circumstances. *Rivera*, *supra*.

We find no abuse of discretion, and we affirm the judgment of sentence based on Judge Covington's opinion. *See* Trial Court Opinion, 5/5/15. We direct the parties to attach a copy of the opinion in the event of further proceedings.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/26/2016</u>

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION-CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA      :    CP-51-CR-0002719-2013

     vs.                      :    887 EDA 2014

WILLIAM THOMPSON            :

**O P I N I O N**

COVINGTON, J.



CP-51-CR-0002719-2013 Comm. v. Thompson William
Opinion

7289993211

**FILED**

MAY  5 2015

Criminal Appeals Unit
First Judicial District of PA

## Procedural History

On November 19, 2013, following a bench trial, the defendant was found guilty of Robbery (18 Pa.C.S. § 3701(A)), Theft by Unlawful Taking (18 Pa.C.S. § 3921(A)), Receiving Stolen Property (18 Pa.C.S. § 3925(A)), Criminal Mischief Tampering With Property (18 Pa.C.S. § 3304(A2)), and Criminal Mischief (18 Pa.C.S. § 3304(A4)). On November 21, 2013, Defendant filed a motion for extraordinary relief. On January 8, 2014, following the completion of a Presentence Investigation Report, Defendant's post-verdict motion was denied and he was sentenced twenty (20) to forty (40) months incarceration followed by three (3) years probation.

On January 17, 2014, Defendant filed a Post Sentence Motion for reconsideration, which was denied on March 13, 2014. On March 20, 2014, Defendant filed a timely notice of Appeal.

## Factual History

On February 12, 2013, at around 3:15 p.m., Mr. Benjamin Rothstein parked his van across the street from the property he owned at 418 West Spencer Street, Philadelphia. N.T. 11/19/2013, pp. 12-14. Mr. Rothstein observed Defendant, his former foster child, on the front steps of the property at 418 West Spencer Street. *Id.* at 15, 36. Mr. Rothstein waited for police

16

officers to escort him and gas company workers into his property to turn the gas off. *Id.* at 40.

Mr. Rothstein previously obtained a stay-away order against Defendant, due to numerous phone calls and threats. *Id.* at 56-57. Defendant approached Mr. Rothstein's van while yelling at Mr. Rothstein to go away. *Id.* Defendant said he was going to "fuck [Mr. Rothstein] up" and he was going to destroy the house so nobody would ever live in it again. *Id.* Defendant further yelled he was going to take an axe to the floor of the house if Mr. Rothstein entered, and that Mr. Rothstein "better get out of there." *Id.* at 15-16. Mr. Rothstein then observed a rock hit his van, leaving a dent. *Id.* at 18. Mr. Rothstein didn't see who threw the rock but saw that it came from the direction of Defendant and his girlfriend. *Id.* at 16-17.

Mr. Rothstein called 911, and Defendant tried to enter the van through the front driver's side door, but the door was locked. *Id.* Defendant punched the window, but failed to break it. *Id.* at 19. Defendant proceeded to walk along the side of the van, while kicking it and screaming at Mr. Rothstein. *Id.* at 20. Defendant tried to enter through the rear doors of the van, but those doors were also locked. *Id.* Defendant then yanked the license plate frame and surrounding area from the rear of the vehicle. Id at 21-23. Defendant approached the passenger-side front door, and was able to open the door that was left unlocked by the prior passenger. *Id.* at 26. Defendant entered the car, grabbed Mr. Rothstein's wrist, and took Mr. Rothstein's wallet from his hand. *Id.* at 27. Defendant then exited the vehicle, and walked back to the house while repeatedly asking Mr. Rothstein, "Do you want this? Do you want this?" *Id.* While Defendant was back inside the house, Mr. Rothstein called the police again. *Id.* Prior to the police arriving, Defendant exited his house, walked down to the sidewalk, again asked Mr. Rothstein if he wanted his wallet back, then threw the wallet across the street onto the top of the roof of a small building. *Id.* at 28-29.

Mr. Joe Cane recovered the wallet from the roof of the small building by climbing a fence. *Id.* at 30. Most of the contents of Mr. Rothstein's wallet were on the ground. *Id.* at 30-31. Mr. Rothstein's wallet previously contained credit cards, pictures, and approximately $80 to $100 in cash. *Id.* at 27. Mr. Rothstein never found one of his credit cards or the cash from inside the wallet. *Id.* at 31.

The Police arrived and knocked on the door of the house located at 418 West Spencer Street. *Id.* at 32. Defendant refused to open the door, saying, "My kids are in here. You are not coming in." *Id.* at 32-33. The police asked Mr. Rothstein for permission to enter the house by physical force, and Mr. Rothstein agreed. *Id.* at 34. The police officer kicked the door in but Defendant had left the property. *Id.* at 34. Mr. Rothstein told the police officers he wanted to press charges against Defendant, and allowed the gas company workers to enter the property and turn off the gas. *Id.* Mr. Rothstein testified Defendant did not have permission to enter the property that day, nor to take his wallet. *Id.* at 36.

Defendant testified he had some financial dealings with Mr. Rothstein in 2011, that didn't work out. N.T. 11/19/2013, p. 76. Defendant stated Mr. Rothstein permitted him to move into the house located at 418 West Spencer Street, with his wife and four children. *Id.* at 77. Defendant said Mr. Rothstein called him at 2:30 p.m. on February 12, 2011, and said, "Watch out. The gas company's coming." *Id.* at 80. Defendant further testified that when he saw Mr. Rothstein's van on the street by the property, he approached the vehicle and knocked on the window politely. *Id.* at 80. Defendant indicated he repeatedly asked Mr. Rothstein to roll his window down to talk, and began to yell. *Id.* at 81. Defendant testified he never threatened Mr. Rothstein or damaged his van. *Id.* at 81-82. Defendant said he leaned in the front passenger side door of the van, argued with Mr. Rothstein about money, and threw Mr. Rothstein's wallet. *Id.*

18

85. Defendant further testified he didn't take any credit card or cash out of the wallet. *Id.* at 86-87.

## Standard of Review

The standard of review for the "admissibility of evidence rests within the sound discretion of the trial court, and such a decision will be reversed only upon a showing that the trial court abused its discretion." *Commonwealth v. Gray*, 867 A.2d 560, 569-70 (Pa.Super. 2004). "An 'abuse of discretion' is not merely an error of judgment, but rather, is the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id.* at 570

## Discussion

Pursuant to the 1925(b) Statement of Errors Complained of on Appeal, the Defendant asserts 12 errors which can be summarized more specifically as the court erred in: (1) in precluding cross examination on several issues, (2) in denying the defendant his right to confront the accuser by precluding cross-examination, (3) in precluding the defendant from making a record during the sentencing hearing. (4) in specifically stating it was precluding counsel from making a record, and (5) in making evidentiary findings so unfair it constituted judicial bias.

### I.     The Court Did Not Err in Sustaining Objections to Defense Cross Examination

The scope of cross-examination during trial is within the discretion of the trial court. *Commonwealth v. Ogrod*, 576 Pa. 412, 459 (Pa. 2003) (quoting *Commonwealth v. Begley*, 566 Pa. 239 (Pa. 2001). During cross-examination, an attorney is permitted to question a witness concerning issues raised on direct examination and impeach a witness through inconsistent acts or omissions during testimony. *Id.* The power of an attorney to question and impeach witnesses

19

is subject to the trial court's power to allow or disallow certain inquiries on cross-examination. *Id.*

The law furnishes no test of relevancy, but tacitly refers it to logic and general experience. *Commonwealth v. Copeland*, 381 Pa. Super. 382 (Pa. Super. Ct. 1988) Evidence is admissible which tends to make the fact at issue more or less probable or intelligible or to show the origin and history of the transaction between the parties and explain its character. *Id.* Therefore, issues of relevancy are left in large measure to the sound discretion of the trial court, whose decisions will not be reversed in the absence of a clear abuse of discretion. *Id.*

In the instant case, defense counsel asked several questions under the guise of exploring intent, bias, and motive to lie. The court repeatedly sustained the Commonwealth's objections to these questions as irrelevant to the current matter, as they failed to further explore the case at hand. The majority of defense counsel's precluded cross examination questions related to Defendant having prior failed financial dealings with the complaining witness, regarding the house Defendant was staying in.

Defense counsel asked Mr. Rothstein, "Isn't it fair to say there was a breakdown in some type of financial relationship between you and [Defendant]?" N.T. 11/19/2013, p. 49. Defense counsel also asked, "Prior to [February 12, 2011] with regard to 418 West Spencer Street was [Defendant] working for you in any capacity?" N.T. 11/19/2013, p. 37. Defense counsel asked, "Is it fair to say that [Defendant] was in the property as a result of a prior financial arrangement between the two of you not working out?" N.T. 11/19/2013, p. 38. Defense counsel asked, "Isn't it true that [Defendant] had given you approximately $25,000 to purchase a home, and that agreement did not go through and that's why you let him live in your house on Spencer Street?" N.T. 11/19/2013, p. 57. These questions were objected to, and sustained, on relevancy grounds.

20

*Id.* at 37, 38, 52, 58. The Court stated, "I kind of get the picture that they had some dealings and, you know, there is some financial stuff between them and [Defendant] felt like he had a right to be in the house and Mr. Rothstein felt like he didn't." N.T. 11/19/2013, p. 79.

Defense counsel attempted to demonstrate that some financial issues involving the property at 418 Spencer Street that went awry. It was clear from the testimony of Mr. Rothstein and by Defense counsel's cross examination, that there was a financial dispute and Mr. Rothstein no longer wanted Defendant in his property. Defense counsel's line of questioning all related to the specifics of the financial dispute. Further exploring the reason Mr. Rothstein wanted Defendant out of his property has no bearing on Mr. Rothstein's bias or motive to lie. All evidence that Mr. Rothstein was biased against the defendant or would want to falsely accuse Defendant can be surmised from the fact that any financial dispute existed. There is no reason why the amount of money exchanged or the nature of their financial dispute would make Mr. Rothstein any more likely to lie than not lie.

Defense counsel asked Mr. Rothstein, "Why were you there letting the gas company in a property that you had let Defendant living in? Why were you going to let them shove the gas off?" N.T. 11/19/2013, p. 40. Defense counsel asked, "Had rent been paid [on the Spencer Street property]?" N.T. 11/19/2013, p. 58. Defense counsel also asked Mr. Rothstein, "When did you live [at 418 Spencer Street]." N.T. 11/19/2013, p. 64. The questions were all objected to, and sustained, on relevancy grounds. *Id.* at 40, 58, 64.

Defense counsel's line of questioning was similarly irrelevant to the issues at hand and to motive or intent to lie. Defense counsel was attempting to illicit more information about the financial dealings, including rent, and whether Mr. Rothstein was attempting to kick Defendant out of his property. As it was clear from previous testimony that Mr. Rothstein wished for

Defendant to leave the property, it is illogical that further testimony on the matter would challenge Mr. Rothstein's credibility.

Defense counsel asked, "Is [your securing a PFA] why you sent a letter to [Defendant and his wife] on March 1, 2013?" N.T. 11/19/2013, p. 57. The question was objected to, and sustained, on relevancy grounds. *Id.* Defense counsel then asked, "When did you get the PFA, sir?" N.T. 11/19/2013, p. 57. The question was objected to, and sustained, on relevancy grounds. *Id.*

Although the securing of a PFA is certainly relevant to Mr. Rothstein's feelings about Defendant and his possible bias against Defendant, the details of the PFA are irrelevant. These questions were also a underhanded method to illicit more testimony about Defendant's financial dealings and Mr. Rothstein's desire for Defendant to leave the property.

Defense counsel asked, "Did you secure any civil paperwork, file anything in the Philadelphia County Court of Common Pleas to commence an ejectment of [Defendant] from 418 Spencer Street?" N.T. 11/19/2013, p. 61. He further asked if Mr. Rothstein testified at the preliminary hearing that "because [Defendant and his family] were in the property so long, they were going to get an ejectment?" *Id.* He then asked, "Did you provide the Commonwealth with any paperwork regarding any type of civil action you were going to take?" *Id.* These questions was objected to, and sustained, on relevancy grounds. *Id.*

This line of questioning from Defense counsel further harps back to Mr. Rothstein's desire for Defendant to leave the property. The methods Mr. Rothstein may or may not have taken to evict Defendant are irrelevant to his propensity to lie about Defendant. It is clear from the circumstances surrounding the incident on February 12, 2011, that Mr. Rothstein was

22

attempting to remove Defendant from the property. Any previous attempts would not render Mr. Rothstein less credible, nor be relevant to Defendant's behaviors on February 12, 2011.

Defense counsel asked Mr. Rothstein, "You didn't tell the police about your letting him live in your property, did you?" and, "you didn't tell the police about money that was owed between you, did you?" N.T. 11/19/2013, p. 64. Both questions were objected to, and sustained, on relevancy grounds. *Id.* at 65.

This final line of questioning from defense counsel is irrelevant to the case at hand and the witness's motive to lie. What Mr. Rothstein told the police is irrelevant to Defendant's actions. What Mr. Rothstein told the police is further irrelevant to his credibility, as it couldn't lead one to believe he was more or less likely to have testified credibly.

## II.    No Confrontation Issue

The United States Supreme Court held that the Confrontation Clause was a trial right, not a discovery tool. So long as the defendant is given a meaningful opportunity to cross-examine at trial, the confrontation clause is not implicated. *Commonwealth. v. Reed*, 644 A.2d 1223, 1225 (Pa. Super. 1994). "In short, the Confrontation Clause only guarantees the opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.*

In the instant case, as explained at large, *supra*, the Defendant was afforded ample opportunity to conduct an effective cross examination. Although defense counsel was not permitted to ask every question he desired, he was able to effectively cross examine the complaining witness, and rulings on cross-examination questions were heard on an individual basis and denied when appropriate.

23

### III. The Court Did Not Preclude Defense Counsel From Making a Record at Sentencing Hearing

"Because Crawford focused only on testimonial evidence at trial, 'it does not change our long-settled rule that the Confrontation Clause does not apply in sentencing hearings. *Commonwealth. v. Wantz*, 84 A.3d 324, 337 (Pa. Super. 2014), quoting *United States v. Stone*, 432 F.3d 651, 654 (6th Cir. 2005). "Under our legislature's "Basic Bill of Rights for Victims," victims of all crimes have the same right to breathe life with all its emotions into their victim impact statements included in the PSI Report." *Id.* quoting *Commonwealth v. McLaughlin*, 74 A.2d 610, 614-615 (Pa. Super. 1990). "Moreover, at the discretion of the trial court, the Commonwealth may properly present live testimony of the victim and/or the victim's family or friends as well as other evidence such as photographs at sentencing on the relevant sentencing issue of "the gravity of the offense as it relates to the impact on the life of the victim and on the community." *Id.* quoting 42 Pa.C.S. 9721.

In the instant case, the Court did not preclude Defense Counsel from making a record, the Court sustained objections of the Commonwealth when Defense Counsel was cross examining. As referenced in *Wantz*, there is no right to cross examination during a sentencing hearing. This is further illustrated by the widely accepted, and encouraged, practice of introducing victim-impact statements, which can be written and presented without testimony or cross examination of the victim.

### IV. The Court Did Not Err in Stating it Was Precluding Defense from Making a Record

Counsel alleges the court erred in "precluding the Defendant from even making a record during sentencing hearing... specifically stating it was precluding counsel from making a record." Defense counsel is referring to the Court's statement, "So I am going to ask you to focus on the

information pertaining to your client's sentencing, we are beyond that. You have made argument on that in your hearing, in your motion for reconsideration, it has been objected to, the object[ion] has been sustained as irrelevant." N.T. 1/9/2014, p. 20. Defense counsel then said, "I understand, Your Honor. Are you precluding me from making a record?" *Id.* The Court replied, "I don't – yes, because that record has been determined, it's not relevant before this court. I am going to ask you, counsel to please focus on your client's sentencing so that I may have relevant information to sentence your client appropriately." *Id.*

The Court's statements, taken as a whole, were not intended to preclude the defense attorney from making a record. The Court merely attempted to bring the defense attorney back to the matter at hand, rather than allowing him to re-litigate Defendant's trial. This statement was made after the defense attorney repeatedly made a record of his opinion that Defendant had engaged in self-help measure, and did not commit any crime.

## V.     There Is No Merit to the Claim of Judicial Bias

Where the appellant's allegations of judicial error were deemed meritless, the courts held, "simply because a judge rules against a defendant does not establish any bias on the part of the judge against that defendant. If the appellate court determines that the party alleging judicial bias received a fair trial, then the allegation of judicial bias is not borne out. *Commonwelath v. Travaglia*, 661 A.2d 352, 367 (Pa. 1995), (citing *Reilly v. SEPTA*, 489 A.2d 1291 (Pa. 1985)).

As discussed, supra, the Defendant's claims of numerous judicial errors are meritless, and a fair trial was administered. Thus, the Defendant's claim of judicial bias lacks merit.

25

## Conclusion

For the foregoing reasons, it is respectfully requested that the Trial Court's determination of guilt beyond a reasonable doubt be affirmed.

BY THIS COURT:

Roxanne E. Covington, J.
May 4, 2015